# THE STEWART TAXI-SERVICE COMPANY *vs.* ROSA GETZ, Infant, by Her Father and Next Friend, Harris Getz.

*Negligence: taxi cabs; evidence of ownership. Testimony: in other suits. Appeals: evidence not in record; remanding of cases for new trial.*
*Code, Art. 5, sec. 22.*

Courts are liberal in admitting evidence tending to establish ownership in cases of suits for damages for injuries received from taxicabs or other vehicles.                          p. 175

In such cases where there is any evidence to identify the vehicle as the property of the defendant there is a *prima facie* presumption that it was at the time of the accident in its possession or operated by means of its driver or servant. But where

there is no evidence whatever as to the ownership of the vehicle or its control, the case should not be allowed to go to the jury. p. 175

Testimony given in another suit where the parties are not the same is not admissible. p. 176

Evidence not in the record will not be considered by the Court of Appeals. p. 176

Where a judgment in favor of a plaintiff is reversed on appeal, it will not be remanded for a new trial, under the Code, Art. 5, sec. 22, when in the judgment of the Court of Appeals there is no evidence in the record to justify a verdict for the plaintiff. p. 176

*Decided.May 10th, 1912.*

Appeal from the Baltimore City Court (ELLIOTT, J.). The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Joseph Townsend England* (with whom was *Wm. H. Hudgins* on the brief), for the appellant.

*Merrill Rosenfeld,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action brought by Rosa Getz, an infant, by her father and next friend against the Stewart Taxi-Service Company, a body corporate, and the United Railways and Electric Company, a body corporate, to recover damages for injuries alleged to have been sustained by her in consequence of the negligence of the servants of these two corporations, resulting in a collision between a cab in which the plaintiff was driving and a car of the United Railways and Electric Company, at the intersection of Caroline and Gough streets, in the City of Baltimore.

The jury was instructed to render a verdict for the United Railways and Electric Company, whereupon a *non-pros* was entered as against that defendant, and the trial proceeded against the other defendant, the jury rendering a verdict for the plaintiff for $250, and from the judgment thereon this appeal was taken.

At the close of the plaintiff's case the defendant offered three prayers which were rejected, and the only exception is to this ruling of the Court.

The first of these prayers asked that the jury be instructed that there was no evidence legally sufficient to entitle the plaintiff to recover and therefore their verdict must be for the defendant.

The second asked an instruction that there was no evidence legally sufficient to show that the taxicab mentioned belonged to, or was owned or operated by the defendant, the Stewart Taxi-Service Company, or by its agents, servants or employees, and their verdict must therefore be for the defendant.

The third asked an instruction that there was no evidence legally sufficient to show that the plaintiff's injuries were caused by the negligence of the Stewart Taxi-Service Company, its agents, servants or employees, and their verdict must therefore be for the defendant.

It is obvious that if there was no legally sufficient evidence that the taxicab mentioned was owned by the defendant, or was operated by its agents, servants or employees, there could be no recovery by the plaintiff in any event, and we shall therefore first consider the defendant's second prayer.

The first witness was the plaintiff, a girl eighteen years of age, who was going to a hospital for treatment, for a severe scald suffered the week previous. She testified "we called the taxicab and he came to the house. * * * Papa carried me out and put me in the taxicab and it was going right from the house towards Caroline and Gough streets when the car struck the taxicab and I fell out of Papa's arms." This was the only reference she made to the taxicab.

The next witness was Dr. Chideckel, Dispensary physician at the Hebrew Hospital to which the plaintiff was going at the time of the accident, and where she was treated by the interne.   Dr. Chideckel did not see her until after she had left the hospital, and returned to her home.   He was her regular physician before and after this accident, and his testimony related exclusively to the condition of her health after as compared with her health before the accident.   He was not asked anything about the taxicab, and presumably never saw it as he did not see the plaintiff while at the hospital.   But however this may be he did not mention any taxicab.

The next witness was H. Mangelstein who saw the collision.   He said he saw "the car strike the taxicab on the back wheel, and both of them stopped, and he went and looked inside the taxicab and saw the plaintiff and her father and immediately went away into his house and that was all he saw.   He made no other mention of the taxicab and none of the driver.

Harris Getz, plaintiff's father, was the next and the last witness.   He said: "My daughter-in-law telephoned up to the Taxicab Company and he come down in a little while and I took her in the taxicab, and as soon as we passed from Spring street into Gough the car comes in and butts into the taxicab and she fell out of my arms.   I had her in my arms and she fell on the floor and I fell on top of her, and mashed my head, and I did not know what had happened. * * * The taxicab was going pretty fast.   I asked him not to take any time.   I only heard the car when it struck the taxicab, and she fell out of my arms.   That was all I saw because I was excited and did not go outside."   The rest of his testimony related exclusively to his daughter's condition, and he made no other mention of the taxicab.

It thus appears that there is a total absence of any evidence whatever showing that the taxicab in question was owned or controlled by the defendant, or operated by any employee or agent of the defendant.   For aught we know

there may be a dozen taxicab companies in public service in Baltimore, and hundreds of individuals owning and operating taxicabs for public use, to any one of which this particular taxicab may have belonged, or by whom it was operated at the time, and upon the state of proof disclosed by the record, the finding by the jury that it was owned or controlled by the defendant was absolutely unsupported. If there had been evidence tending in any manner to identify the taxicab as the property of the defendant, the inference might have been justified that the defendant was in its possession and control by the driver as it servant, in the absence of proof to the contrary, as was held in *Vonderhorst Brewing Co.* v. *Amrhine,* 98 Md. 411.

The Courts have been properly liberal in the admission of evidence tending to establish the ownership of vehicles in cases of this character, and in sustaining the inference of possession and control from any admissible evidence of ownership, but it is only where there is some such evidence, however slight, that such a case should be submitted to the jury. Upon the evidence in this case the verdict might as well have been rendered against any other taxicab company in the City of Baltimore, or any individual who might have been named as defendant, as against the Stewart Taxicab Company. The evidence established absolutely nothing, either by direct testimony, or inference of any kind, as to the vital fact of ownership or control, and the verdict and judgment therefore ought not to stand.

The appellee's counsel printed in his brief an extract from the testimony of John O'Brien, given as the brief alleges "in a subsequent case between the same parties arising out of the same accident, namely, the loss of services, before the same judge, as to the ownership of the cab in question and O'Brien's employment as cnauffer of defendant, on that occasion," and relies upon this to supply the defect of proof. From the language of the brief which we have quoted, it would not appear that the parties were the same in the two suits, one being by the father in his own right for the loss

of the daughter's services, and the other by the daughter in her own right through her father, as nominal plaintiff, for the injuries she claimed to have sustained.

But apart from that, the testimony in the father's case constitutes no part of the record in this case and cannot be considered by us for any purpose.

This defect of proof goes equally to the defendant's first and third prayers, and all three of its prayers should have been granted.

It may be that this defect of proof was due to mere inadvertence and if this were the only ground of error we should feel disposed, while reversing the judgment for the reasons above stated, to remand the case for a new trial, as authorized by section 22 of Article 5 of the Code; but we cannot discover in this record any legally sufficient evidence of negligence on the part of the owner or driver of the taxicab. Dr. Chideckel did not witness the collision and knew nothing about it. The father, the daughter, and the only remaining witness, Mangelstein, all agree that *the street car ran into the taxicab,* and no one of them testifies to any fact tending to prove any negligence of the chauffer. The daughter's testimony on this point is confined to the bare statement that the car struck the taxicab. The father in describing the occurrence confines himself to the statement that "the car comes in and butts into the taxicab." He said he believed he saw the car, but was so nervous that he only heard it when it struck the cab, that the taxicab was going pretty fast, and he asked him not to take any time.

All that Mangelstein said was that both the car and the taxicab were running fast, "and the car came straight into the wheel of the taxicab, and both stopped."

Upon such evidence a verdict for the plaintiff could only be founded upon mere conjecture, which is never allowed. and this judgment must therefore be reversed without a new trial.

*Judgment reversed without awarding a new trial, the appellee to pay the costs above and below.*