STEWART TAXI-SERVICE COMPANY, A Body
Corporate,

*vs.*

BASIL ROY.

*Evidence: conflict; question for jury. Appeals: prayers.*

Where the evidence is conflicting and irreconcilable, the case
is one for the consideration of the jury.                p. 77

An objection to a granted prayer can not be considered on
appeal, unless a special exception, relying upon the alleged de·
fect in the prayer, appears by the record to have been taken
below.                                                   p. 79

There is a reasonable presumption that a person driving a
team or taxicab is the agent or servant of the owner, unless it be
shown that the contrary was the fact.                    p. 76

Whether the proof offered is sufficient to rebut the presump-
tion of agency is a question for the jury.               p. 76

*Decided November 11th, 1915.*

Appeal from the Court of Common Pleas of Baltimore
City.   (Dawkins, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Arthur L. Jackson,* for the appellant.

*John B. Gontrum* (with whom were *Henry B. Mann* and *John S. Biddison* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

This suit was instituted by the appellee, Basil Roy, against the Stewart Taxi-Service Company, a body corporate, to recover damages for injuries to himself, which were sustained in consequence of the alleged negligence of the servant or agent of the defendant in driving an automobile against and over him. The injuries are alleged to have been sustained on the 19th of September, 1914, while the appellee was walking along Eastern avenue, a public highway of Baltimore County. The declaration contained two counts. The first count alleged that the appellee was using proper care and caution in walking upon said highway; that while so walking "an automobile, owned by the said Stewart Taxi-Service Company was negligently and unskillfully, and without the exercise of due care and caution operated or driven by one of the agents, employees, or servants of the said defendant on Eastern avenue road, near Prospect Park aforesaid mentioned; and that by reason of said negligence and unskillfulness and want of ordinary care and caution on the part of said defendant, its agent, servant, or employee, the said automobile was driven or run against and struck and injured the plaintiff as he was then and there walking along and on said Eastern avenue road and using all due and ordinary care and caution, whereby the said plaintiff was greatly injured and disabled and his ankle broken; and the plaintiff as a result of said injuries, suffered great physical pain and

distress and mental anguish and suffered great financial loss
and damage; and said injuries were caused by the negligence
and absence of due care and caution on the part of the
defendant, his agent, servant, and employee, and not by
reason of any want of due care and caution on the part of the
plaintiff thereto contributing." · The second count alleged
that the injuries sustained were permanent, but in other re-
spects it was like the first. The defendant pleaded that he
did not commit the wrongs alleged, and issue was joined upon
this plea. A jury was sworn, and after a trial a verdict was
rendered against the defendant, and, after a motion for a new
trial had been overruled, a judgment was entered upon the
verdict, and from that judgment the defendant appealed.

It is unnecessary to the decision of the legal questions
raised to discuss with particularity the evidence contained in
the record. It is most conflicting and utterly irreconcilable.
The main facts upon which the plaintiff relied are these:
that a little after midnight on the 19th of September, 1914,
he was walking on the Eastern avenue road towards his
home; that he was on the right side of the road near the
gutter; when he had reached a dark place in the road he
heard the noise of a machine; he turned around but saw no
light and heard no horn blow, and he concluded that the
machine was not coming towards him; he then turned to
continue his journey and as he turned he was struck by the
machine; he was near the ditch on the side of the road, and·
was knocked into the ditch by the machine; that the machine
ran over him and one of his feet was caught in the right hind
wheel; that he extricated it with much difficulty and pain;
that he was helped to his house by the men in the machine;
that a physician was called, and he was found to be severely
and painfully injured, and was confined to his bed for ·two
weeks; that there were no lights upon the machine; that the
men wanted to leave him in the road but he begged them to
take him to his home. The plaintiff's testimony was corro-
borated in many important particulars, especially his state-

ment that the place where he was struck was dark and that the machine had no lights. He was attended by Dr. France for two weeks, and was taken to a hospital where an X-ray picture was taken of his foot. He was bruised and lacerated; his shoulder was injured and one ankle was fractured. The plaintiff testified that his shoulder was "all right now" but that he still suffered from his ankle. Dr. France, the attending physician, described the plaintiff's injuries. He said: "Mr. Roy had a lacerated face and apparently a dislocated shoulder," and the witness thought at that time there was a fracture of the ankle joint; later he found there was such fracture; that he found the plaintiff suffering severely from shock, under excitement, and very considerably depressed. That he attended him for about two weeks, and Mr. Roy called at the office after that, but just when and how long before he stopped going to see him he could not recall. That it took about two weeks for the external injuries to be treated first for the lacerations to heal sufficiently to put pressure on them to approximate the joint. After the picture was taken we found the fracture of the internal bone of the ankle joint; that is usually caused by direct violence."

He further gave some testimony, to which we will presently refer and to which exceptions were taken, tending to show that the injuries were permanent. It was admitted that the machine was owned by the defendant, and it was shown in the testimony offered on behalf of the plaintiff that it was driven at the time the plaintiff was injured by William J. Ennis. There is no evidence to show and it is not contended that the plaintiff was guilty of contributory negligence. The defense relied upon was: *first,* that the plaintiff was not injured by the defendant's car. That he did not strike him. This was testified to by Ennis, the driver, and by the witness Casey. They testified that as they approached a certain point on the highway, they saw an object in the road some little distance ahead; that they stopped the car and found the plaintiff lying in the road; that he was moan-

ing, and said his leg was broken, and, at his request, they took him home. Casey said that when they found the plaintiff "his face was dirty and wet and bloody, and his clothes were dirty, he was messed up in general." Both of these witnesses said the lights on the front of the car were burning; and testimony to this effect was given by another witness. *Secondly,* that Ennis, who was driving the car, was not the agent or servant of the defendant, and therefore, if it be conceded that the plaintiff was struck as alleged in the declaration, the defendant could not be held liable.

It may be well at this point to refer to the testimony offered on the part of the defendant as to how Ennis came into the possession of the car. Ennis was an employee of the Fisk Rubber Company. He had never been in the employ of the defendant. Under a contract between the Fisk Rubber Company and the defendant he was "employed by the Fisk Rubber Company as inspector of automobile tires for the Stewart Taxi-Service Company, and also of mileage meters, and to see that the running gears on all these cabs will run properly in order to give the best mileage that can be got out of those tires." He testified that the engine of the cab had been overhauled, and at the request of Mr. Cassiday, then and now an employee of the defendant, but who was not called as a witness, he took the cab out to test it for him; that he ran it around a city block, and in company with Casey he went out the Belair road for some distance. They came back to Baltimore, and went down Eastern avenue as far as Prospect Park where he was compelled to do some repair work to the car. He said, "it takes 100 miles to run an engine before you get it right when you have overhauled it. If you take it out of the shop, and give it to a chauffeur before you have tried it you will have to send somebody out to take it home." Asked what his purpose was in taking the cab out, the witness said: "I have had quite a lot of experience with automobiles, and Mr. Stewart seemed to be a little busy, and Mr. Cassiday, his office man, asked me if I

would take it out and test it for him, as my time had finished with the Fisk Rubber Company twelve o'clock noon." He had tested cabs out for Mr. Cassiday as often as once a month.

Harry L. Stewart was the general manager of the defendant company. He said it was his duty to look after the business generally, and to keep a watch on everything; that there was no other person in active charge of the business. That Mr. Cassiday had been in the employ of the Company ever since it was organized; that he was employed in the capacity of starter, and that he had no authority to send out cabs in the control of anyone except the employees of the company; he denied that he had known that Cassiday had sent this car out on the night in question, but he did not deny that he had knowledge that Cassiday had permitted Ennis to take cars out on other occasions as testified to by him.

We have no doubt that the evidence offered on the part of the plaintiff was sufficient to have taken the case to the jury, and if believed by them to have warranted a verdict for the plaintiff. If that evidence be true, Ennis was unquestionably guilty of actionable negligence. This proposition is evident, and is fully supported by section 149, Article 56 of the Code, and by the case of *Fletcher* v. *Dixon,* 107 Md. 420, and the recent case of *Biogini* v. *Steynen,* 124 Md. 369. It was also sufficient to have justified the jury in finding that Ennis was the servant of the defendant. The cab was owned by the defendant and Ennis was operating it. These facts made out a *prima facie case* in support of the allegation that the machine was operated by the defendant's agent or servant. In the case of *Vonderhorst Brewing Co.* v. *Amrhine,* 98 Md. 406, JUDGE MCSHERRY said: "There is evidence in the record showing that the wagon which collided with the plaintiff was owned by the Vonderhorst Brewing Company. And there is also evidence, adduced by the defendants, that the wagon which ran into the plaintiff's team had on it the name of the Vonderhorst Brewing Com-

pany.   These facts were sufficient to justify the jury in con-
cluding that the driver of the wagon was the agent of the
owner of the wagon.    That proposition was expressly sus-
tained by LORD CHIEF JUSTICE DENMAN in the case of
*Joyce* v. *Capel and Slaughter,* 8 Car. & Pay, 370.   It was
there held that in an action for damages done to the plain-
tiff's lug-boat by the negligence of the defendant's servant
in steering the defendant's barge, when it was proved that
the barge was the defendant's but the plaintiff's witnesses
could not identify the barge-man who was steering the barge,
that this was *prima facie* evidence that the barge was steered
by the defendants' servant, and that if the barge was on hire
or was taken by any other person, it lay on the defendants to
show that.   And so in the case of *Edgeworth* v. *Wood,* 58 N.
J. L. 463, s. c. 33 Atl. Rep. 940, following the decision of
LORD DENMAN, it appearing in an action against an express
company for negligence in running over the plaintiff by a
wagon drawn by two horses, that the wagon was painted in a
peculiar manner and marked with the name of the express
company and a peculiar device used by it; the Supreme
Court of New Jersey held that the evidence that the wagon
which ran over the plaintiff was so painted and marked, was
sufficient to justify the inference that the defendant express
company was its owner, and that such inference established
*prima facie* that the company was in possession and control
of the wagon by the driver as its servant.   Other cases to the
same effect might be cited but it is not deemed necessary to
allude to them because the proposition is quite self-evident.
It is a reasonable presumption that a person driving the
team of another is the agent or servant of the owner of the
team, unless it is shown by the owner of the team that the
contrary is the fact."   It is supposed that this plain state-
ment of the law has been limited or modified by the cases
of *Steinman* v. *The Laundry Co.,* 109 Md. 62, and *Syming-
ton* v. *Sipes,* 121 Md. 313.   Those cases rest upon an entirely
different principle, and the Vonderhorst case was not re-

ferred to in either of them. The facts were entirely dissimilar. In the first of those cases the Court held that upon the evidence produced by the plaintiff the agent of the laundry company was acting beyond the scope of his authority, and in the latter case JUDGE URNER, after stating the facts, which have not the remotest anology to the facts of this case, said: "Upon the facts we have recited, as to which there is no dispute, we have no hesitation in deciding, as a matter of law, that the appellant is not liable in this action, and that the instruction he proposed to that effect should have been granted. The proof makes it perfectly clear that even if the chauffeur be regarded as the servant of the appellant rather than of his brother, during the period in question, he was not at the time of the collision acting within the scope of his employment, but was using the automobile contrary to the express orders to which he was then subject and exclusively for his own individual purposes. The decisions are unamimous in holding that under such circumstances the servant is solely responsible for the consequences of his negligence."

The evidence offered by the defendant to show that Cassiday had no authority to send the machine out to be tested is not of such a character as to have warranted the Court, under the circumstances of this case, in deciding that Ennis was not the defendant's agent. That question was properly left to the jury under the facts in evidence. *Brager* v. *Levy*, 122 Md. 554, and cases cited in the opinion in that case.

We now pass to the consideration of the prayers granted at the conclusion of the whole case. The Court granted the plaintiff's first, second and third prayers. The third prayer was the usual one on the measure of damages. The first and second prayers were granted in connection with the defendant's sixth prayer as modified by the Court. This modified prayer and the first and second prayers of the plaintiff are here set out:

*Plaintiff's 1st Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that on

or about the nineteenth day of September, 1914, the plaintiff was injured by the automobile or taxicab of the defendant, while operated by the agent or servant of the defendant, on the Eastern avenue road, a public thoroughfare of Baltimore County, near a place known as Prospect Park, if the jury so find, and the plaintiff's injury resulted directly from the want of ordinary care and prudence on the part of the defendant, its agent or servant, and not from the want of ordinary care and prudence on the part of the plaintiff directly contributing to the accident, then the plaintiff is entitled to a judgment.

*Plaintiff's 2nd Prayer.*—The plaintiff prays the Court to instruct the jury that even if the jury believe that the plaintiff was guilty of the want of ordinary care and prudence while walking upon Eastern avenue, under the circumstances testified to before them; yet if the jury further find that if the defendant's servant or agent had used in and about the running, operating or management of the automobile that injured the plaintiff, ordinary prudence and care in the running, operating or management thereof, and in keeping a reasonable lookout and in having lights on the automobile burning the said accident could not have occurred, then the plaintiff is entitled to recover, provided they find the other facts set out in the first instruction granted to the plaintiff.

*Defendant's Modified 6th Prayer.*—The jury are instructed that if they find from all the evidence in this case that at the time of the happening of the accident mentioned in the testimony, the defendant's taxicab was then operated by one William J. Ennis, and shall further find that at the time of the happening of said accident the said William J. Ennis was not operating said taxicab for the defendant company and if the jury further find that the said Ennis was not acting as its agent and servant within the scope of his employment, then the verdict of the jury must be for the defendant."

The defendant's fourth prayer, which told the jury they

must find for the defendant if from all the testimony they find that the taxicab did not strike the plaintiff, was granted.

It follows from what we have said that the defendant's first, second and third prayers, which sought to withdraw the case from the jury, were properly refused, and that the special exceptions to the plaintiff's first and second prayer were properly overruled. There was no evidence in the case to support the theory of the defendant's fifth prayer, and the Court was right in rejecting it. We find no error in the modification of the defendant's sixth prayer, and upon a review of the whole record we are of opinion that the case was fairly submitted to the jury under the granted prayers.

The record contains a number of exceptions to testimony, all, except one, were taken to the testimony of Dr. France, relating to the extent of the plaintiff's injuries. We do not think it necessary to discuss these several exceptions. We have given them due consideration, and find no reversible error in any of them.

It was insisted that the plaintiff's second prayer was bad, because it *assumed* a fact, viz, that the plaintiff was *injured by the automobile*. This was a *granted* prayer, and it is well settled that this objection, if well founded, cannot be considered on this appeal, as no special exception relying upon the alleged defect was taken in the trial Court. *Code,* Art. 5, sec. 9; *Gunther* v. *Dranbauer,* 86 Md. 1; *Vonderhorst Brewing Co.* v. *Amrhine, supra.*

*Judgment affirmed, with costs above and below.*