THE INTERNATIONAL COMPANY v. MARY A. CLARK.

*Injury by Automobile—Scope of Employment—Insurance of Defendant—Irrelevancy of Evidence—Non Pros.*

If an automobile which caused an accident belonged to the defendant and was at the time being operated by one in the latter's general employ, there is a reasonable presumption that at such time he was acting within the scope of his employment and in furtherance of his master's business, but this presumption is *prima facie* only.                              p. 37

Where the evidence offered to establish the presumption referred to is contradictory, or if the facts are such as to leave the court in doubt as to the question, it should be submitted to the jury, while if the facts are undisputed and uncontradicted, it is properly a question for the court.                              p. 38

The evidence showing that defendant's employee, who was driving its truck at the time of the accident to plaintiff, was expected to drive defendant's trucks when one of the regular drivers was sick or absent, and that, at the time of the accident, about 11.30 P. M., he was taking the truck to the garage, as requested by its regular driver, he having in the meanwhile stopped with the truck at his own home between two and three hours, *held* that the question whether he was at the time acting within the scope of his employment was for the jury. pp. 38-41

In an action for personal injuries, while the fact that defendant is insured and that consequently the insurer is the real defendant is wholly irrelevent, and introduction of evidence to that effect by plaintiff's counsel or witnesses may justify the withdrawal of a juror and continuance of the case; nevertheless, if the defendant or his counsel, who may also be, and generally is, the insurer's counsel, brings into court officers or employees of the insurer, or the defendant's witnesses give testimony showing that defendant is protected by insurance, and such testimony is not objected to, defendant is not entitled to a *non pros.* because plaintiff's counsel, in argument to the jury, makes legitimate comment on that evidence. pp. 42-44

Where, in an action for personal injuries, evidence is improperly introduced showing that defendant is insured and that the insurer is the real defendant, the correct procedure for defendant is to move the court to withdraw a juror and continue the case. p. 44

*Decided January 15th, 1925.*

Appeal from the Baltimore City Court (DUFFY, J.).

Action by Mary A. Clark against the International Company. From a judgment for plaintiff in the sum of sixteen hundred dollars and costs, defendant appeals. Affirmed.

The cause was argued before PATTISON, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*L. Wethered Barroll,* with whom was *William L. Marbury* on the brief, for the appellant.

*George W. Cameron,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The appellee in this case obtained a verdict by the jury in the Baltimore City Court against the appellant on April 25th, 1924, for $1,600, and on May 2nd, 1924, after the motion made by the appellant for a new trial had been withdrawn, judgment was entered on the verdict in said court for the sum of $1,600, with interest from April 25, 1924. It is from this judgment that the appeal in this case is taken. The record contains two exceptions taken by the defendant below, the first to the instructions of the court on the law as represented by the prayers of the plaintiff and defendant, and the court's own instructions, and the second to the overruling of a motion by the defendant for a judgment of *non pros.*, made during the course of the argument before the jury. The plaintiff offered two prayers and the defendant five. The court's action upon these resulted in the granting of the plaintiff's second prayer and the defendant's first, third and fourth prayers, the giving of an instruction by the court of its own motion, and the refusal of the defendant's second and fifth prayers. The plaintiff's second prayer, which was granted, was a proper instruction as to the measure of damages, in the event the jury should find for the plaintiff, and the action of the court in respect to this prayer was correct. The instructions under which the jury considered the case, if it should have been allowed to consider it at all, were granted at the instance of the defendant, which, together with the court's instruction, were a correct statement of the law applicable to the case and presented it to the jury in as fair and favorable light to the defendant as it was entitled to have. The only question involved in this appeal in respect to these instructions is the correctness of the court's ruling in rejecting the defendant's second and fifth prayers, which were demurrers to the evidence and sought to have the case withdrawn from the jury.

The case grew out of an accident in which the plaintiff was injured by an automobile truck belonging to the defendant, and driven at the time of the accident by one Gottlieb

Flieg, who was employed generally by the defendant; the single question to be considered being whether or not at the time of the accident the driver was acting within the scope of his employment and was the agent or servant of the defendant at that time.    If he was acting within the scope of his employment at the time of the accident, the defendant is liable, and the second and fifth prayers of the defendant were properly rejected; if on the other hand at the time of the accident Flieg was acting outside of the scope of his employment and was not engaged either directly or indirectly in the furtherance of his master's business, the defendant is not liable, and the court erred in rejecting the prayers of the defendant seeking to withdraw the case from the jury. A statement of the law covering this class of cases at this time would serve no useful purpose and would only be a repetition of what this Court has said in a line of cases dealing with this question, and it is only necessary to refer to the opinions in the cases of *Vonderhorst Brewing Co. v. Amrhine,* 98 Md. 411; *Stewart Taxi Service Co. v. Getz,* 118 Md. 171; *Symington v. Sipes,* 121 Md. 313; *Stewart Taxi Service Co. v. Roy,* 127 Md. 70; *State, use of Debelius, v. Benson,* 129 Md. 693; *Pollock v. Watts,* 142 Md. 403; *Dearholt Motor Sales Co. v. Merritt,* 133 Md. 323; *Jordan Stabler Company v. Tankersly,* 146 Md. 454; and *Salowitch v. Kres, ante,* p. 23, in which cases the question has been exhaustively considered and the law applicable thereto clearly defined.    Since these cases, there is very little room for doubt as to the law, and the only question which arises is the application of the rules therein laid down to the facts of any particular case.    The cases referred to firmly establish the law as being that, if the automobile causing the accident belongs to the defendant and is being operated at the time of the accident by one in the general employ of the defendant, there is a reasonable presumption that at such time he was acting within the scope of his employment and in further-ance of his master's business, and that this presumption is only *prima facie* and may be rebutted and overcome by

evidence adduced during the trial, by the testimony of any of the parties to the suit. It is equally well settled that where the evidence offered to establish facts which would rebut this presumption is contradictory, the question is one for the jury; but where the facts so offered are undisputed and uncontradicted, it becomes properly a question for the court. It might be added that where the facts are such as to leave the court in doubt as to this question, the proper course is to submit the case to the jury, it being their function to pass upon the weight of the evidence.

We will now examine the facts in the case under consideration to determine the applicability of the law to them, as decided and laid down by the cases above referred to. The record discloses that the accident here occurred near the northwest intersection of Calvert Street and Mount Royal Avenue in the City of Baltimore, between 11 and 12 o'clock on the night of August 1st, 1923; that the plaintiff, appellee here, accompanied by a woman friend, had just previous to the time of the accident walked north on St. Paul Street to Mount Royal Avenue, then east on Mount Royal Avenue to the southwest corner of Calvert Street and Mount Royal Avenue, and was then attempting to proceed in the track of pedestrians to cross Mount Royal Avenue from the southwest corner of that avenue and Calvert Street to the northwest corner thereof, and shortly before reaching the north curb of Mount Royal Avenue was struck, knocked down, and injured by the defendant's truck driven by Flieg, who was at that time in the defendant's general employ. The question of the negligence of the driver of the truck, and whether the plaintiff was struck and injured by this particular truck driven by Flieg, were questions submitted to the jury under the granted instructions, and the evidence on these points was amply sufficient for the jury to render the verdict which they did. The appellant, however, contends that its prayers withdrawing the case from the jury should have been granted, because the driver at the time of the accident was not acting within the scope of his employ-

ment as agent and servant of the defendant. The evidence above recited undoubtedly created the presumption that he was so acting, and it was incumbent upon the defendant to overcome this presumption. Does the evidence in this case conclusively show the defendant has met the burden thus cast upon him, is the real question for decision, the answer to which must be found by an examination of the testimony on this point. Without burdening this opinion with the detailed testimony, we find that the defendant is engaged in the business of bakery and confectionery supplies, conducting said business at 309-311 Exchange Place; that in the conduct of said business it owned and used two White trucks and the Ford truck which was being driven by Flieg at the time of the accident; that among other employees, in addition to Flieg, the defendant employed Raymond Short, who had been engaged by it some time in June of that year; that at the time Short was first employed he was unable to operate a truck, but subsequently, on July 2nd, 1923, he obtained an operator's license; that the Ford truck was purchased by the defendant in June, and at the time of the purchase Flieg went to the place of business of the party from whom it was purchased and drove same to defendant's store, and under instructions of Mr. Smith, the manager of the defendant, began instructing Short in the operation of the Ford truck; that after Short learned to operate the truck Flieg's duties were that of a general utility man, sometimes driving one of the White trucks on the business of the defendant, or any other truck when the regular chauffeur was sick or absent; that according to the witnesses for the defendant, Short and Flieg, their duties were practically the same, that of running the trucks and making deliveries for the defendant, and when no deliveries had to be made, working inside of the store and doing generally what was necessary about the business. It does not appear affirmatively that from the time Short obtained his operator's license Flieg operated the Ford truck up to the night of the accident. At the close of business each day, which usually was about 5 o'clock in the

afternoon, it was the duty of Short to make deliveries of any articles to be delivered, and then carry the Ford truck to the garage on Argyle Avenue, where it was kept at night. On the evening of the accident Short left the defendant's place of business, driving the Ford truck with a number of articles to be delivered, and according to his testimony, having planned to attend a dance on that evening, he requested Flieg to come to his (Short's) place of residence, get the truck, and take it to the garage, and that the keys of the truck he could get from Short's aunt, who lived with him. About 8.30 o'clock that evening Flieg went to the home of Short, obtained the key, and drove the truck to Goff and Patterson Park Avenues, several squares from his home, with the intention, as he says, to go on a joy-ride with a number of young friends. After leaving the truck he went to his home to get supper, after supper falling asleep and not being awakened until about 11.20 P. M. Upon his awakening he did not go on the contemplated joy-ride, but immediately got the truck and proceeded to take it to the garage, during which trip the accident occurred. It appears that there were certain articles, consisting of bottles of flavoring syrup, in the truck at the time of the accident, which belonged to the defendant or were to have been delivered to customers. It also appears that the testimony given by Flieg at the trial as above stated was different from the story told by him to the police officer immediately following the accident, in which, according to that officer's testimony, Flieg said that after he got the truck from the home of Short, he made certain deliveries, went home and got his supper, and then made other deliveries, and was returning the truck to the garage when the accident happened. It is apparent from all of the testimony that it was among the duties of Flieg to drive the trucks of the defendant whenever it became necessary, and particularly when one of the other operators was sick or absent; and that the superintendent or manager of the defendant, Mr. Smith, knew of these duties being performed by Flieg, with or without special and particular

directions for him to do so. The duties of Flieg were varied and changed from day to day, and it cannot be said as a matter of law that when he took the truck from Short's home and carried it to a point near his own home, after making deliveries or without making deliveries for the defendant, even though his intention, as testified to by him, should have been to engage in a joy-ride, which was abandoned, that he was engaged in his own business or pleasure while returning the truck to the garage, and was not acting in furtherance of his master's business or within the scope of his employment. The record discloses conflicting testimony on this point which must be weighed, and some of which must be believed, disbelieved, or reconciled, in order to determine whether at the time of the accident Flieg was acting within the scope of his employment. When such a condition is presented by the evidence, the determination is one for the jury, under proper instructions. The learned court below in his memorandum of opinion says: "This case is in the class of *Roy v. Taxi Co.,* 127 Md. 77, rather than in that of *Symington v. Sipes,* 121 Md. 314; *Debelius v. Benson,* 129 Md. 696, and *Dearholt v. Merritt,* 133 Md. 330"; and with this statement we are in accord. The facts in the *Symington-Sipes* case, without contradiction, showed that there had been a departure from the master's business and that the accident occurred before the servant had returned to the point of departure; and in the *Debelius* case it was shown that the servant, whose duty it was to take the car to the garage, did in fact take it to the garage, thereby completing his master's business, and subsequently used the car for his own purpose, during which time the accident occurred, and it made no difference as a matter of law whether he was returning to the garage at the time of the accident or not, his departure being when he did not leave it at the garage upon first reaching there. In the *Dearholt* case the facts were uncontradicted that the driver was not in the employ of the defendant at all and was a trespasser when he took the truck and was driving it at the time of the accident. We therefore find no error in the

rejection of the defendant's prayers, the granting of which would have withdrawn the case from the jury.

The remaining exception is to the action of the court in overruling the defendant's motion for a judgment of *non pros.* This motion was based upon a statement made by the appellee's counsel in argument to the jury that the witness, Catherine Rosario, had called on the insurance company and offered to testify for the defendant, to which mention of and reference to the insurance company, which was protecting the defendant from any loss it might sustain by reason of a verdict against the defendant in this case, the defendant's counsel objected. It is undoubtedly true that in many cases of this character counsel for plaintiff, consciously or unconsciously, often do or say things which might indicate to the jury that while the suit is nominally between the plaintiff and defendant, as shown by the record, the defendant is protected by liability insurance and in reality the defendant is the insurance company. If the defendant, engaging servants to drive automobiles, and knowing the frequency of accidents, has had the foresight and prudence to insure itself against loss or liability resulting from accident, this fact has nothing whatever to do with the merits of the suit being tried, and is wholly irrelevant and immaterial to the issue, and could only have the effect of prejudicing the jury in their verdict, either as to the finding for the plaintiff or the amount of damages which they might assess. This information, even if given to the jury, should have no weight and should not be considered by them in making up their verdict; but no matter how it should be, all persons who are familiar with the trial of this class of cases in our courts know from experience that juries are affected and influenced by such evidence or statements. In a case like this it seems to be natural and a weakness of human nature to allow the fact that the record defendant will not have to pay the judgment, to influence them in their verdict, and this even though they may have a firm determination not to allow themselves to be so influenced. Any deliberate and

willful attempt by an attorney for the plaintiff to so influence the jury is highly reprehensible and will almost certainly meet with swift and positive condemnation by the trial judge; and so when unintentionally the intimation or fact of the defendant's liability insurance is conveyed to the jury by plaintiff or his counsel or witnesses, the court usually removes the possibility of harm by withdrawing a juror and continuing the case, but where the defendant or his counsel, who may also be, and generally is, the counsel for the insurance company, brings into court at the trial of the case officers or employees of the insurance company, or the defendant's own witnesses testify to circumstances that show there is insurance protecting the defendant, and this testimony goes in without exception or objection, we do not think the defendant is entitled to a judgment of *non pros.* because plaintiff's counsel in his argument to the jury makes legitimate comment upon that evidence. In the present case the witness, Catherine Rosario, produced on behalf of the defendant, while under cross-examination testified:

"Q. Did you have any talk with Mrs. Haynes about the story you were going to tell? (Witness): With Mrs. Haynes? (Mr. Cameron): You know Mrs. Haynes, she is sitting over there next to the wall? (Witness): Yes, sir. Q. You know her? A. Yes, sir. Q. Did you ever have any talk with her about the story you were going to tell A. No, sir, I never said anything. Q. You never said anything to her? A. No, sir. Q. You told her you were going to be paid to come here? A. No, sir. Q. Well, you are not? A. I am not being paid. I volunteered—I voluntarily went down and I made it my business to go down and find out the name of the fruit company. I went there to court. Q. Why? A. Because I had very good reasons. Q. After you got the name of the fruit company what did you do? What did you do after you got the name? A. I went down to the fruit company. Q. Who did you see down there? A. I saw some one in charge of the claim department. Q. What did you tell them? A. This man just referred me to the insur-

ance company. Q. And then you went to see the insurance man? A. I made it my business just to visit one office. Q. You made it your business to visit one office? A. Visit one office. Q. What office did you go to? A. I went to Mr. Gonnary. Q. This man sitting here (indicating)? A. Yes, sir. Q. Why did you go there? A. Well, I just thought a report ought to be made of it."

She then denied that she was receiving any money for testifying, also she denied that she had gone to the Central Police Station or discussed the plaintiff's case with Mrs. Haynes. The witness explained that she had difficulty with the plaintiff over some men who came to see the plaintiff and had come into the witness' room. This testimony went to the jury without objection or exception and was given by a witness produced by the defendant. It showed that by reason of some ill-feeling or grudge that the witness had against the plaintiff, she voluntarily went to the defendant, which she called the "fruit company," and being referred by them to the insurance company, called on the claim agent of the insurance company, volunteering to assist them in the defense of the case, and pointed out during this testimony that the claim agent of the insurance company was then in court. Under these circumstances we do not think that the comment made by the plaintiff's attorney in his argument to the jury was sufficient to base a motion for a judgment of *non pros;* and the trial court properly overruled the motion. This action of the lower court was proper for the further reason that, under the conditions, the correct procedure on the part of the counsel for the appellant would have been to move the court to withdraw a juror and continue the case.

Fnding no error in the action of the learned judge below in his ruling upon the prayers or in refusing the motion for a judgment of *non pros,* the judgment must be affirmed.

*Judgment affirmed, with costs.*