## JAMES OPECELLO ET AL. *v.* MARGARET A. MEADS.

*Injury By Automobile—Used for Instruction in Driving—Negligence of Instructor—Of Pupil—Liability of Owner—Personal Injuries—Opinion of Person Injured.*

There being evidence that one accompanying another in an automobile, for the purpose of instructing the latter in driving, could, after he saw plaintiff walking across the road, have taken control of the car in time to prevent injury to plaintiff, it was for the jury to say whether prompter action by the instructor in taking the wheel was reasonably required of him, and whether such action would have obviated the accident.          p. 34

An automobile dealer who employs one to perform instruction service, and provides a car for the purpose, is liable for the negligence of such instructor in the control of the car, while engaged in such service. p. 34

The statutory provision giving to vehicles the right of way over pedestrians between street crossings has no application in the case of a driveway in a public park, over which there are no defined pedestrians' crossing. p. 35

Where, in connection with the business of an automobile dealer, his employee was teaching a purchaser to drive, in a car belonging to the dealer, the employee had such potential control of the car, and such duties as to guarding against the possible injurious consequences of the pupil's unskillfulness, that the dealer was not exempt from liability for an injury received by a pedestrian while the pupil was attempting to drive, on the theory that this was caused solely by the negligence of the pupil. pp. 35-37

In an action for personal injuries, plaintiff, having testified that her leg was still, ten months after the accident, so stiff that she could not use it in the machine work as seamstress in which she had been for many years engaged, could properly be asked whether she expected to be able "in the near future" to resume her work, this not calling for her opinion. pp. 37, 38

In an action for injury to one while crossing a park driveway, caused by an automobile, a witness for plaintiff was properly allowed to testify that, a half hour after the accident, he traced wheel marks of an automobile, running into the grass border in the same course as that mentioned in the testimony of the persons who were in the automobile. p. 38

*Decided December 14th, 1926.*

Appeal from the Baltimore City Court (SOLTER, J.).

Action by Margaret A. Meads against James Opecello and others. From a judgment for plaintiff, defendants appeal. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Walter L. Clark* and *Roszel C. Thomsen,* with whom was *Oliver Y. Harris* on the brief, for the appellants.

*J. Cookman Boyd,* for the appellee.

URNER, J., delivered the opinion of the Court.

While crossing a road in Patterson Park, near an entrance from Baltimore Street, in the City of Baltimore, the appellant, Mrs. Margaret A. Meads, was struck and injured by the left front fender of an automobile owned by Louis Cremona, in which his employee, Frank P. Cremona, was giving instructions in driving to James Opecello, who was seated at the wheel. The three last named persons were joined as defendants in this suit for damages on account of the accident, and they have all appealed from a judgment for the plaintiff on the verdict of a jury. There were two rulings on the admissibility of evidence, and one on the prayers, to which exceptions were taken in the course of the trial.

The plaintiff testified: "When I started across the road I looked up and down, but did not see anything. I had a look at the entrance, there was no machine between me and the entrance; it came right in and knocked me down. There was no horn blown or signal of any kind. * * * I didn't stop as I crossed the road, * * * I was walking fast enough, my regular gait. * * * I looked both ways as I was crossing. * * *" The car which struck Mrs. Meads came through the entrance from Baltimore Street, which was to her left as she crossed the road. She was then thirty or forty feet from the entrance, according to her estimate. Mrs. Meads stated that she did not see the car, or become aware of its approach, before she was struck, because it "came in right fast and didn't make any noise." The road was about

forty feet wide, and she had nearly reached the other side, as she said, when the accident happened.

James Opecello, who was being instructed in the operation of the car, in consideration of his purchase from Louis Cremona of another car of the same type, testified: "We stopped before we made the curve into the park, came to a full stop. Then afterwards we started off again because nobody was coming from the park." He said that when he first saw the plaintiff, the car was half way through the gateway. She was then crossing the road, and the car was so close to her that Cremona said "stop," but the witness testified: "I couldn't stop right away and so he took the wheel from my hand." The car was turned sharply to the right, he said, and ran up on the strip of grass between the driveway and the sidewalk. When asked why he didn't stop the car when he saw the plaintiff he replied: "Well, I was so nervous, I couldn't stop." In answer to the inquiry: "You did not know enough about driving a machine to stop it quickly enough?", he said: "I didn't know much at that time, no."

The testimony of Frank P. Cremona is in part as follows: "I went out to teach Opecello to drive. We had been out four days the week before, * * * this was the fifth time. I got Opecello at Duncan and Baltimore Streets. He took the wheel. * * * I told him to stop at the park gates before we turned, he stopped, then started his car again. At the entrance to the park there is a gutter between the entrance and the street there, an incline about two feet grade in the space of the pavement. We had to give it gas to make the grade. * * * We went ahead and then we passed the west side posts which obstruct the view. When I came to that point I saw a woman not far from the machine. I told him to stop. He got excited and instead of stopping he tried to give it gas, and I took the wheel and turned to the right. * * * No signal was given when we started in because nobody was in view, but when I saw the lady I told him to blow the horn and he did. Then I told him to stop, realiz-

ing the lady did not see anything, or she could not get out of the way the way she was walking. * * * When I saw he didn't stop I turned the wheel. He got excited and gave it more gas, so I took the wheel and turned to the right, while I was putting on the brake with the left hand. * * * On cross-examination he testified: "I saw this lady and told Opecello to stop right after we passed the posts. We were about twelve feet away from her then. * * * There was no necessity of running into her. If she kept walking she was all right. It was not any place to stop. There was a place to go to the right or left. We had time to stop the car after we saw her. The car was not running fast at all, not over twelve miles an hour. It could have been stopped in ten feet easily. He did not stop, but I tried to get out of the way. There was no necessity to stop it sooner. I took the wheel, before she went down, about the time. She was then four or five feet away. * * * He had gone very close at that time and my machine was just turning to the side when she went down. She was not struck by the front. * * * Q. Why didn't you take the wheel when you first saw the lady instead of telling this man whom you were instructing to blow the horn? A. Because there was ample time to get away."

Louis Cremona testified that he was selling automobiles prior to the time of the accident, and had sold one to Opecello and was having him taught to drive a car in order that he might obtain an operator's license before the delivery of the car he had purchased. It appears from the testimony of Louis Cremona that he had employed his brother Frank to give Opecello the necessary instruction, and had placed a used car at his brother's disposal for that purpose.

At the conclusion of the testimony, each of the three defendants sought a directed verdict in his favor on the theory that as to him there was no evidence legally sufficient to support a recovery. The trial court refused to withdraw the case from the jury as to any of the defendants, and we shall first consider the propriety of that ruling.

It is readily inferable from the evidence that the accident was caused by negligence in the operation of the car by which the plaintiff was injured. There is no dispute as to the fact of such negligence, but the contention is that Frank Cremona was not involved in it, and that, therefore, neither he nor his employer, Louis Cremona, is amenable to this action. The act of Opecello, as described in the testimony of Frank Cremona, in accelerating, instead of retarding, the movement of the automobile, when directed by his instructor to stop the car, in order to avoid collision with the plaintiff, was unquestionably negligent and was plainly due to his inexperience. But there was ground in the proof for the inference that the instructor might and should in the exercise of proper care have intervened in time to save the plaintiff from harm. He specifically ordered the management of the car as it entered the park and approached the plaintiff, and he took control of the wheel when she was four or five feet distant. The ability and opportunity of the instructor to take full control of the car existed when he first saw the plaintiff, and when, as he said, it could readily have been stopped before her position was reached. If he had seized the wheel when the danger first became apparent, and had then diverted it from the line of its progress toward the plaintiff, the injury to her, as the jury could conclude from the evidence, might have been obviated. It was for the jury to decide whether prompter action by the instructor to that end was reasonably required of him under the circumstances. A decision in the affirmative on both of those questions could find support in the testimony. For any negligence of the instructor in the control of the car there can be no doubt that the defendant who employed him to perform the instruction service, and who provided the car for the purpose, would be liable. *International Co. v. Clarke,* 147 Md. 34; *Louis v. Johnson,* 146 Md. 115; *Jordan Stabler Co. v. Tankersly,* 146 Md. 454; *Stewart Taxi Service Co. v. Roy,* 127 Md. 70; *Mattingly v. Montgomery,* 106 Md. 461; *Vonderhorst Brewing Co. v. Amrhine,* 98 Md. 406.

The prayers to withdraw the case from the jury as to the respective defendants were properly refused.

There is said to have been error in the refusal of the defendants' eighth prayer, which proposed to have the jury instructed that, under the Motor Vehicle Law of Maryland, pedestrians have the right of way at street crossings, and vehicles have the right of way between street crossings, and that if the jury found from the evidence that the plaintiff was not injured at a street crossing, then the defendant's automobile had the right of way, and it was the duty of the plaintiff to stop and let it pass, and the verdict should be for the defendants, unless the jury believed that, after the plaintiff was in a position of peril, the driver of the car could, by the exercise of ordinary care, have stopped, or turned aside, in time to have prevented the accident. It does not appear from the evidence that there are any defined pedestrians' crossings over the park driveway on which the accident occurred. There is consequently no basis for the theory of the prayer that the place of the accident may have been between street crossings. As in the case of *Consolidated Gas Co. v. Rudiger,* 151 Md. 226, the conditions in reference to which the statutory right of way rule may be properly declared in an instruction to the jury have not been shown to exist. There was no error in the ruling upon this prayer.

It is urged that the refusal of prayer No. 9 of the defendant Louis Cremona was erroneous. This prayer was in the following form: "The court instructs the jury that there is no evidence in this case legally sufficient to prove that the defendant, Opecello, was at the time of the accident and immediately prior thereto, acting as the agent of the defendant Louis Cremona; that if they shall believe from all the evidence that the injury to the plaintiff was caused solely by the negligence of Opecello, then their verdict shall be for the defendant Louis Cremona."

In *Doyon v. Massoline Motor Car Co.,* 98 N. J. L. 540, where an automobile, which a salesman was demonstrating for a person contemplating its purchase, struck and injured

a pedestrian, the defendant corporation owning the car was held to be liable for its negligent operation, regardless of the question as to whether the salesman or the prospective purchaser was driving the car when the plaintiff was injured, it having been customary to permit the driving of a car by the person for whom it was being demonstrated, but the evidence being in conflict as to whether he or the demonstrator was driving it at the time of the accident in the case then under consideration.

In *Easton v. United Trade School Contracting Co.,* 173 Cal. 199, a school, teaching automobile driving, was held to be liable for injuries inflicted by the negligent operation of an automobile by one of its students, while he was being taught to drive the car by one of its instructors. The court said: "The defendant as a part of its business employed Sterling to give Harper instructions. It paid Sterling for so doing. Sterling, in the performance of this employment, used his own judgment, which by operation of law became the defendant's judgment, in turning the management of the car over to Harper when and as he did. That the accident resulted from the ignorance and inexperience of Harper may not be doubted, and while, of course, Harper would be responsible for his own act in the premises, and Sterling in turn responsible, nevertheless, the defendant, under whose directions all these things were done, is likewise responsible." It was said by the Supreme Court of Oregon, in *Holmbee v. Morgan,* 69 Or. 395, that a salesman, who was demonstrating an automobile to a purchaser and teaching him how to run it, as an implied consideration of the sale, was not relieved of control because he permitted the purchaser to drive the car, but was in charge of it and should have "taken control" if he "thought they were in a locality where the car should be in the hands of an expert."

In the present case, upon the proof as to the purpose for which the car of Louis Cremona was being used, at his instance, we think the negligence of Opecello was legally imputable to the owner as having occurred in the course of a

service which he had agreed to provide. It was in pursuance of the owner's business that his car was being operated by an inexperienced driver at the time of the accident which occasioned this suit. The risk of such a mishap was directly involved in the instruction service, unless proper care were exercised by the instructor in the selection of the place for the lessons, in directing the pupil's efforts, and in guarding against the possibly injurious consequences of his unskilfulness. The car was constantly under the potential control of the instructor as the owner's paid employee, upon whose guidance and assistance the learner at the wheel was necessarily dependent. While it may be inferred from the evidence that Opecello had an instruction license, yet this entitled him to drive an automobile only when accompanied by a regularly licensed operator. Code, art. 56, sec. 186. In view of the instructor's duty and authority in regard to the operation of the car, and of the purpose, in the line of the owner's business, for which it was being used at the time of the accident, we are unable to hold, as proposed by his prayer, No. 9, that he should be exempt from liability in this case if the plaintiff's injury was caused solely by the negligent driving of the person whose inexperience necessitated the instruction which the owner was then providing.

There are two other prayers of the defendants which were refused, but no reference was made to them in the appellants' brief, and it is clear that they could not properly have been granted.

The first evidence exception was reserved because Mrs. Meads, the plaintiff, was allowed to be asked the question: "Is there a prospect, so far as you can tell, of your ability to work in the near future?" Her answer was "No, I don't think there is." The case was tried about ten months after the accident, and Mrs. Meads had testified that as a result of the injury then received she was still suffering from pain, and her right leg, which was in a cast for six weeks, continued to be stiff, so that she could not use it in the machine work in which she had previously been engaged for many

years as a seamstress. The question was objected to because it was supposed to call for an opinion from the plaintiff, a non-expert witness, as to the probable permanence of the injury which she had sustained. The physician who attended her, and who followed her on the witness stand, testified that he considered the injury to her knee to be permanent. But the inquiry addressed to the plaintiff herself was simply whether she expected to be able "in the near future" to resume her work. A negative answer to that inquiry was indicated by the plaintiff's existing physical condition which she had described. There is no ground of reversal in the ruling which is the subject of this exception.

The remaining exception refers to the action of the trial court in overruling a motion of the defendant to strike out the testimony of Policeman Charles H. Meads, to the effect that about half an hour after the plaintiff, his mother, was injured, he went to the scene of the accident and found the wheel marks of an automobile extending from the Park entrance about thirty feet along the left side of the driveway and then making a sharp curve to the right and continuing into the grass along the margin. This testimony had been admitted over objection. The witness was not allowed to state any conclusions from his observations, but was permitted to describe the automobile tracks which he traced, and which followed a curve similar to that mentioned by Opecello and Frank Cremona as the course of their car to the grass border to the right of the roadway when it was turned in that direction. The motion to strike out the testimony in question was properly overruled.

*Judgment affirmed, with costs.*