GREENWAY, ET AL. *v.* CRAFT, ET AL.

[No. 338, September Term, 1969.]

*Decided May 6, 1970.*

2

The cause was argued before HAMMOND, C. J., and McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Jack H. Olender*, with whom were *Vaden S. Pitts* and *Donald D. Wike* on the brief, for appellants.

*Thomas A. Farrington*, with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

At the close of the plaintiffs' case the trial judge, R. B. Mathias, J., directed a verdict for the defendants, appellees here, who seem to have succeeded in persuading him that *Larsen v. Romeo*, 254 Md. 220 (1969), is controlling. They have adopted the same approach here but, as will be seen, we are rather less susceptible to their

suasion. We have compared the facts in the case at bar with the facts related in *Larsen;* we think they present a horse of a somewhat different color. In our recital of those facts we shall, of course, be at all times mindful of the familiar rule that the evidence and all logical and reasonable inferences deducible therefrom must be considered in a light most favorable to the appellants. *Ackerhalt v. Hanline Brothers,* 253 Md. 13 (1969).

In the late afternoon of 3 May 1967, Lynda Lee Craft (Lynda), then 16, was in the student's seat (left front) of a "driver education car" owned by the Prince George's County Board of Education. The instructor's seat (right front) was occupied by Ravis G. Stickney (Stickney) the football coach and a member of the faculty at her school. They had been driving around the Oxon Hill area for an hour or so when Stickney, needing gasoline, told her to turn in to a service station managed by the appellant, Dennis W. Greenway (Greenway). Lynda, after entering the station, made a wide sweeping turn and then headed straight for the right side of the two door Mercury sedan of the appellant, Clara Jean Kramer (Mrs. Kramer), which was standing just beyond the outboard side of the pump island. Greenway was standing alongside Mrs. Kramer's car cleaning her windshield; an attendant was filling her fuel tank. Greenway noticed Lynda enter the station but he continued to give his undivided attention to Mrs. Kramer's windshield. He said he heard "an engine * * * rev * * * like somebody * * * [just] hit the accelerator * * * wide open all the way to the floor." He "turned to look and * * * [saw Lynda's car] two or three" feet away and coming "right on top" of him. He was pinned against Mrs. Kramer's car and he thought it "about cut * * * [him] in two." The right door of Mrs. Kramer's car was stove in; she was shaken but not hurt. Greenway and Mrs. Kramer filed suit in May 1968. The case was reached for trial on 3 September 1969.

Lynda was called by the appellants as an adverse witness. Code, Art. 35, § 9 (1965 Repl. Vol.). She testified the car had an automatic transmission and "dual brakes"

and that she had received from Stickney a total of "about three hours" instruction, at different times. As she made her sweeping turn she "touched the brake" to slow the car. When she reached a point "about a car length * * * or two" from Greenway "[her] foot just hit the gas." She said this was "just a mistake," that it "happens to a lot of beginning drivers." What follows is an excerpt from her cross-examination:

> "Q. And you are aware that after you hit the accelerator pedal he [Stickney] stepped on the brake; is that right? A. Yes.
> Q. And the brake broke? A. Yes; it did.
> Q. About how far away? A. About a car length.
> Q. When he put on his brake? A. Yes.
> Q. He put on his brake very shortly after you made your mistake? A. Yes; right away. Broke right off."

It was explained to us at argument that on Stickney's side of the car there was a device, connected by a cable to the brake pedal on the driver's side, which was designed to allow Stickney to make an emergency application of the brakes from his side of the car, in case the driver (Lynda) failed to do so. According to the record before us Stickney's only comment immediately after the accident was, "My goodness, what happened?" A somewhat inconsistent later statement was made to Dennis Auth, an employee of Greenway. He said Stickney told him that "when the car started to go forward he stepped on the dual brake and it then broke." The only witnesses called to establish liability were Greenway, Mrs. Kramer, Auth and Lynda.

## I.

In *Larsen,* the plaintiff Larsen was southbound on Route 1 (four lanes, no median divider) in Prince George's County. When he came to its intersection with Rhode Island Avenue he stopped in the extreme right lane, in obedience to a red light. While waiting for the

light to change he was struck in the rear by Romeo's tractor-trailer. His car was driven forward into a pole on the right side of the road and he was severely injured. He called Romeo as an adverse witness. Romeo testified he approached Larsen's car at a speed of 15 to 20 miles per hour and about 25 feet from Larsen he applied his brakes but they failed. He said also that his tractor had passed an I.C.C. inspection "a week or two prior to the accident" and that they had worked perfectly before the accident. Judge Marbury, for the Court, reaffirmed the rule announced in *Langville v. Glen Burnie Coach Lines,* 233 Md. 181, 185-86 (1963), and quoted from the opinion of Judge Prescott (later Chief Judge) :

" 'At this point, we are confronted by the well-established rule of evidence that the burden mentioned above is not met by proof adduced by the plaintiff to the effect that defendant's negligence may have caused the injuries, or even that it probably did cause them, if it also appears from plaintiff's evidence that the injuries may have resulted from some other cause for which the defendant is not responsible. * * *

" 'We think the evidence produced by the plaintiffs in the instant case falls directly within the pattern of the above rule, and precludes their recovery against the defendant. It is obvious that the defendant could not properly be held responsible for a sudden and unforeseeable brake failure such as that proved by the plaintiffs, and which they showed could have caused the injuries; therefore it was incumbent upon them to eliminate the brake failure as the efficient and proximate cause of the injuries complained of, before they could recover for the negligence of the appellee's driver, which we have had to assume. This, they failed to do; consequently, the action of the trial judge in taking

the case from the jury was correct.' " *Id.* at 226-27.

At the trial below there were admitted into evidence, without objection, four photographs of the right door of Mrs. Kramer's car, taken just after the accident. As in most two door sedans the door is large. Asked if the indentation in the side of the door represented "the point where Mr. Greenway was standing" Mrs. Kramer answered, "Yes, sir. You could see his knee prints right in the side of it." The cost of repairing the door (the only damage to her car) was only $188.74. Greenway sustained "a mild fracture of the proximal third of the right fibula" and "an internal derangement of the knee." Quite unlike the collision in Larsen, the obvious inference here is that Lynda's car was just short of a complete stop when it came in contact with Greenway and the door. She (Mrs. Kramer) said there was "none of that hard metal behind the door," suggesting that very little force would be required to push in the thin metallic outer covering of the door. Greenway's knees, it is clear, were caught between Lynda's bumper and Mrs. Kramer's door. If Lynda's car had not been just short of a complete stop the bones in Greenway's legs would surely have been crushed requiring, perhaps, the amputation of both legs. We do not make light of his injuries. There is no doubt he experienced pain and disablement. We merely point out that if Lynda's car had not been almost stopped his injuries would have been massive and perhaps fatal.

In *Larsen,* Romeo testified the brakes failed when he was about 25 feet from Larsen going 15 to 20 miles per hour. There is no evidence of "brake failure" here. Lynda said she slowed down as she entered the station by putting her foot on the brake. When she was "about a car length and a half" from Greenway she stepped on the accelerator, "wide open all the way to the floor." As the car lurched forward "Stickney then hit the brake," i.e., the device on his side of the car. What then made the car stop where it did stop? Certainly not Lynda's foot on the

accelerator. The conclusion seems to be inescapable that Stickney's application of the brakes brought the car almost to a stop before it struck Greenway. The fact that something "broke off" on his side of the car suggests only that he stepped so hard on "something" that it broke. There is no evidence that the braking effort was thereby impaired. Indeed we think it is a quite reasonable inference that the braking effort had been completed and that, as a result, the car had been brought almost to a stop when "it" broke.

That there is sufficient evidence to support a finding of negligence on Lynda's part seems not to be questioned. And we think the same is true in respect of Stickney. To allow a neophyte with only a few hours training to drive a car into a service station and to make the conspicuously erratic manoeuvre described in the evidence is, in our judgment, quite enough to support a verdict against him. In *Opecello v. Meads,* 152 Md. 29 (1926), the instructor, sitting beside the driver, was found to be negligent in not seizing the wheel and stopping the car upon becoming aware of the likelihood of danger to the plaintiff. Our predecessors upheld the refusal of the trial judge to direct a verdict for the instructor.

While we are fully persuaded that the evidence falls short of supporting a "brake failure," there is another reason why the judgment of the trial court must be set aside. In *Mintzer v. Miller,* 249 Md. 506 (1968), the plaintiff testified that the defendant said he "was sorry, that his brakes gave away." At the close of the plaintiff's case the trial judge directed a verdict for the defendant. We reversed. Judge Barnes, for the Court, said:

> "* * * It is the defendant who claimed that there was a failure of his brakes, but he did not state and the evidence of the plaintiffs does not show that there was a proper inspection and a sudden failure without warning."
>
> * * *
>
> "* * * [T]he Maryland law is that where the

owner or *operator* of a vehicle causing a rear end collision depends on the grounds of defective brakes, the burden of showing proper inspection and a sudden failure without warning rests upon the defendant." (Emphasis added.) *Id.* at 508, 509-10.

There is not a trace of evidence in the case at bar dealing with, or even suggesting, a proper inspection of Stickney's brakes.

## II.

Since the case must be retried a brief additional comment suggests itself. The general rule is that "[a] person learning to operate a motor vehicle under the tutelage of another is liable for injuries resulting from his own negligence in the operation of such vehicle. He is not relieved from liability for such negligence because of reliance upon the promise of his instructor to render assistance in avoiding danger." 8 Am.Jur.2d, *Automobiles & Highway Traffic* § 698 at 249 (1963); *see Opecello v. Meads, supra.* Also, a driving instructor cannot be held liable for the operator's negligence if he himself is free of negligence. *See Opecello v. Meads, supra;* and 60A C.J.S., *Motor Vehicles* § 444 at 1085 (1969). However, one who undertakes to teach an unlicensed operator to drive may be liable for injury to a third person caused by the operator where he does not act as a reasonably prudent driving instructor, in teaching or supervising the pupil, or where he fails to take the proper precautions. *See White v. Parks,* 154 Md. 195 (1928); 8 Am.Jur.2d, *supra* at § 565; Annot., *Liability, For Personal Injury or Property Damage, For Negligence in Teaching or Supervision of Learning Driver,* 6 A.L.R.3d 271 (1966). The latter rule also applies where the operator is not negligent. *White v. Parks, supra;* 60A C.J.S., *supra.*

*Judgments reversed.*
*Remanded for a new trial.*
*Appellees to pay the costs.*