# WILLIAM A. WHITELOCK

*vs.*

# BERRY DENNIS.

*Running of Automobile—Liability of Owner—Negligence of Son.*

That the owner's son or daughter was driving an automobile at the time of an injury to another traveler, and that such child was guilty of negligence contributing to the injury, did not necessarily render the parent liable for the injury, since, to impose liability on a parent for the wrongful act of his child, he must be connected with the wrongful act, ordinarily by showing that he induced or approved it, or that the relation of master and servant existed between him and the child.     p. 560

While an automobile is not such an inherently dangerous machine as to make applicable thereto the rule requiring extraordinary care of dangerous instrumentalities, reasonable care in its running must be exercised, and the driver must have in mind that he has not the exclusive right to use the highway.
                                                        p. 561

That the owner of an automobile gives to his chauffeur permission to use it for his own purposes does not make the owner liable for injuries occurring while it is so used.     p. 563

The owner of an automobile, not shown to have been purchased for the pleasure or use of his family, is not liable for the negligence of his son in running the car, though by the owner's permission, if the son, while doing so, was acting wholly for his own purposes, and that the son is financially irresponsible is immaterial.                         pp. 563, 564

Whether the son of the owner of an automobile was, at the time of an accident resulting from his negligence, running it wholly for the son's purposes, *held,* on conflicting evidence, to be a question for the jury.                         p. 565

*Decided December 2nd, 1921.*

Appeal from the Circuit Court for Wicomico County (BAILEY and DUER, JJ.).

Action by Berry Dennis against William A. Whitelock. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, and OFFUTT, JJ.

*Benjamin A. Johnson,* with whom were *Long & Johnson* on the brief, for the appellant.

*Amos W. Woodcock,* with whom were *Woodcock & Webb* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment rendered in favor of the appellee against the appellant for damages resulting from the alleged negligence of a minor son of the defendant (appellant) in driving an automobile owned by the defendant. The only bill of exceptions in the record is one presenting the rulings on the prayers, two of which were granted with amendments for the plaintiff, and five out of six offered by the defendant were rejected. But the principal and important question is whether the defendant was liable for the negligence of his son, Dryden Whitelock, who was eighteen years of age, under the circumstances shown by the record.

The facts are that the defendant was the owner of a Buick automobile; that on October 30, 1920, he agreed with Fred Gordry to allow him to use his automobile during that afternoon, and delivered the car to Gordry for use by him, afterwards going to Salisbury for several hours. Upon his return he learned for the first time that his son had used the car during his absence. That he had not given him any directions to use it that afternoon, and had no idea he would use it; that when requested his son would drive the car for him, and was allowed to use it for his own purposes at times when

he asked for it, and if he desired to use the car for his own affairs and he was not at home, the son used it and he had never objected to any such use. It was during the time that the defendant was in Salisbury that the accident complained of happened.

Dryden Whitelock had a license which authorized him to operate any automobile, but he drove the one of the defendant more than any other. The defendant did not have a license and his son was the only member of his family who had an operator's license on October 30th, 1920, and he drove the car for defendant whenever he requested him to do so, but other persons also drove it for him. Dryden used the car that afternoon to get shats for the hog pen of Ollie Hitchins, who was a son-in-law of defendant. They lived in the same house with defendant and his family, but they did not live as one family. Hitchins gave Dryden a dollar for his services in getting the shats.

Although the declaration alleges that the son was driving the car for the defendant on said date, "acting in the execution of duties assigned to him by the defendant as the defendant's servant or agent," "and within the course of his employment," there is nothing in the record to sustain those allegations excepting the statement of Colonel Woodcock, one of the attorneys for the plaintiff, which was accepted as testimony, to the effect that Dryden told him in the presence of the defendant that he was using the car at the time of the accident to get some pine shats for his father. The defendant, the son, and two other witnesses testified that the shats were for Hitchins, but that was for the jury to determine.

There is a great conflict between the authorities as to the liability of a parent for the negligence of a son or daughter while driving an automobile owned by the parent—particularly if the child is a minor. Some of the cases are in irreconcilable conflict, while others can be reconciled when the facts are carefully inquired into. Whatever view we may adopt on some questions, it may as well be conceded in advance that

it is probable, if not certain, that there may be found deci-
sions to the contrary.   If there were merely two lines of
cases, and we were called upon to determine which of the two
we would follow, we would have an easier task; but the
difficulty is that we may agree with one line on some points,
and differ with the cases in it on other points involved in
them.   There are, however, some rules connected with or
closely related to those which can be said to be reasonably
well settled by so many authorities that we can have no hesi-
tancy in accepting them as satisfactory and proper rules to
follow, if not already practically determined in this State.
One is thus stated, in *Huddy, Automobiles,* sec. 656, page
849 : "The mere fact that a son or daughter of the owner
of an automobile was driving the machine at the time of an
injury to another traveler, and that such child was guilty of
negligence contributing to the injury, does not necessarily
render the owner liable for the injury.   It is a broad general
rule in the law of torts that a parent is not liable for the
wrongful acts of his children, whether they are minors or
adults.   In order to charge the parent with responsibility,
he must be connected with the wrongful acts.   Generally, it
must be shown that he induced or approved the acts, or that
the relation of master and servant existed between the parent
and child."   The author cites many authorities in support of
the text.   Another is that, notwithstanding the above rule,
"if the relationship of master and servant exists between
them as to the driving of the machine on the occasion in
question, the owner may be liable." *Ibid.,* 851.

There are also many decisions to the effect that when an
automobile is purchased for the pleasure of the owner's
family, the owner's liability is not necessarily dependent
upon his being in it when an injury is sustained by another
person owing to the negligent operation of the car, but he
may be liable for the negligence of his child or another mem-
ber of his family who was driving the car for the conveni-
ence or pleasure of other members of the family.   That seems

to be on the theory that the relation of master and servant exists between them and that the child is engaged in the master's business. Whether the child or other member of the family is acting within the scope of the owner's business when he is running the car for his own purposes has resulted in decidedly conflicting opinions, as will be seen by cases cited in the notes on pages 857-859 of *Huddy, Automobiles.*

While we have fully recognized the right of owners of automobiles to use the public highways in a lawful and proper way, and fully concur with the cases which have said that an automobile is not such an inherently dangerous machine as makes the rule requiring extraordinary care of dangerous instrumentalities applicable to such a means of conveyance (2 *R. C. L.,* 1190, and cases cited; *Symington* v. *Sipes,* 121 Md. 318), we have not overlooked the fact that it may become, in the hands of incompetent or careless drivers, dangerous to others using the highways, and in the running of them reasonable care must be exercised, and the driver must have in mind that he does not have the exclusive right to use the highways. *Fletcher* v. *Dixon,* 107 Md. 420; *Winner* v. *Linton,* 120 Md. 276.

In *Symington* v. *Sipes, supra,* where we held, as a matter of law, that the owner of an automobile was not liable for the negligence of his chauffeur, because the latter was not at the time of the collision acting within the scope of his employment, but was using the automobile contrary to orders to which he was then subject, and exclusively for his own individual purposes, we repeated the familiar rule announced by us in previous cases, that "the master is liable for the negligent act of his servant only when it is committed within the scope of the service for which he is employed," and added, "There is nothing in the statutory law of the State relating to the use of motor vehicles that is inconsistent with the well settled principle of the common law." There are decisions by this Court which involve the question whether the owner was liable, inasmuch as the chauffeur was said to have been acting

for his own purposes and not for the business of his employer. In some of them, where the evidence was clear, we sustained the lower courts in taking the cases from the jury (*Symington v. Sipes, supra; State, use of Debelius v. Benson,* 129 Md. 693), while in others it was for the jury to determine the facts, which were in doubt, as may be illustrated by *Stewart Taxi-Service Co. v. Roy,* 127 Md. 70.

In the note to *White Oak Coal Co. v. Rivoux,* 88 Ohio St. 18, as reported in *Ann. Cas.,* 1914 C, 1082, there are a great many cases cited to support the general statement that "in order to render the owner of an automobile liable for the negligent act of the driver thereof, the latter must be the agent or servant of the owner and acting within the scope of his employment at the time the act is committed." In the notes to *Reilly v. Connable,* 214 N. Y. 586, as reported in *Ann. Cas.* 1916 A, 656, and to *Griffin v. Russell,* 144 Ga. 275, as reported in *Ann. Cas.* 1917 D, 995, later cases are cited, and in the application of the rule on page 1001 of *Ann. Cas.* 1917 D, it is said: "If an employee of the owner of an automobile is using the car wholly for his own business or pleasure, *either with or without the owner's permission,* the owner is not liable to a person injured by the negligent operation of the car," citing *LaFitte v. Schunamann* (Ga.), 92 S. E. 295; *Garner v. Souders* (Ga.), 92 S. E. 965; *State v. Benson,* 129 Md. 693; *Higgins v. Bieford,* 227 Mass. 52, 116 N. E. 245; *Brinkman v. Zuckerman* (Mich.), 159 N. W. 316; *Ostrander v. Armour,* 176 App. Div. 152, 161 N. Y. S. 961; *Bogorad v. Dix,* 176 App. Div. 774, 162 N. Y. S. 992; *Scheel v. Shaw,* 252 Pa. 451, 97 Atl. 685.

In regard to *State v. Benson,* it is proper to say that this Court only went this far in that case—that "it is open to very serious doubt whether the permissive use by a servant for his own business of a machine of the master, is sufficient to render the master liable," citing some cases, and adding that it was not necessary to determine that point. In *Huddy, Automobiles* (5th Ed.), 819, it is said: "Though the opinion has

been expressed that the owner of a motor vehicle who permits his chauffeur to use the machine upon the personal business of the latter may be liable for the negligence of such chauffeur, the overwhelming weight of authority supports the view that the owner is not liable under such circumstances." A great many authorities are cited in the note, and after a further examination of them, we are satisfied that giving the chauffeur permission to use a car for his own purposes does not make the owner liable for injuries occurring while so used. The notes in the annotated cases referred to then discuss the subject when the driver is a child of the owner and cites many cases on both sides of the question of the liability of the owner for injuries caused by the negligence of the child. See also *Huddy, Automobiles,* section 660, beginning on page 856.

It does not not seem to us logical to hold that, if the driver of the owner, who is not related to him, is acting beyond the scope of his employment or not acting for his employer's but for his own business when the accident occurs, then the owner is not responsible, yet if the driver be a son of the owner, although acting wholly for his own business in running the car, the owner is liable. We can see no good reason for holding the owner to a stricter liability in the one case then in the other. Of course it may be more difficult to prove that a son is engaged in his own business and is not acting for his father than in the case of a chauffeur not related, but if it be correct to say that the mere relationship existing between the owner of a motor vehicle and a member of his family who is driving it is not sufficient to render the owner responsible for the negligent conduct of such driver, as the cases generally, if not universally, do, and the owner is liable, if at all, on the theory of master and servant or principal and agent, as he is in the case of an unrelated chauffeur, then why should there be a different application of the principles of law to the two cases? Some of the cases speak of the danger of letting incompetent children run the

cars, but if the parent permits a child who is not a licensed operator, or one he knows to be reckless and incompetent, to run a car, another question may arise.

The argument is made that if the owner is not held responsible if the accident is caused by the negligence of a minor son or daughter, the party injured is practically without remedy in most cases. But infants are liable for their torts (1 *Poe, Pl. & Pr.,* sec. 475), and a judgment against one of them may eventually be as easily recovered as those against chauffeurs, who are not always financially able to respond in damages. But beyond that, there can be no valid reason for permitting recovery against an owner of a car simply because his son or daughter, whose negligence caused an injury, is not financially responsible, in a kind of case in which he would not be responsible if his chauffeur's negligence had caused the injury.

We are not now considering the question of liability of an owner when the purchase of the automobile was for the pleasure or use of the owner's family, as the record does not show that this car was so purchased, and the cases of *Myers* v. *Shipley* and *Baitary* v. *Smith,* on the present docket, directly involve that question and will be considered in the opinions filed in them, but under the facts of this case, which we have set out in full above, we are unable to reach a conclusion that the defendant is, as a matter of law, liable. We are, therefore, of the opinion that the plaintiff's first and second prayers were erroneously granted. The only difference between the two is that the first had reference to damages for the injury to the buggy of the plaintiff and the second to those which the plaintiff sustained by reason of loss of the services of his wife, etc. The portion of the prayers applicable to this question left to the jury to find that "the defendant's son was operating the defendant's automobile, with the defendant's permission; that the defendant's son, while operating the said automobile as aforesaid, * * * negligently caused it to run into the plaintiff's buggy, etc." The mere fact that the car

was being driven by the son of defendant did not make him liable, as is practically agreed by all the authorities, and the prayers ignore the evidence of the defendant and his witnesses that the son was running the car wholly for his own purposes. Outside of the evidence of Colonel Woodcock as to the statement of the son in the presence of his father, there was no evidence offered by plaintiff on that subject, but the question of fact as raised by that conflict was for the jury to determine.

As there was a conflict in the evidence just spoken of, the defendant's first prayer, which sought to take the case away from the jury, was properly rejected. For the same reason, there was no error in rejecting the defendant's second prayer. The defendant's third prayer was as follows: "The jury is instructed at the instance of the defendant that if they find from the evidence that Dryden Whitelock was using the automobile of the defendant, William A. Whitelock, at the time of the happening of the accident complained of solely for his own business or pleasure, with or without the knowledge or consent of his father, the said William A. Whitelock, then their verdict must be for the defendant."

In our opinion that was a good prayer under the circumstances of this case. The question of the purposes for which the son was using the car was submitted to the jury. We are not willing to commit ourselves to the doctrine that an owner of an automobile is responsible for injuries sustained by a third party by reason of the negligence of a minor son in running the car, if the car was, at the time, being used by the son for his own purposes and not for those of his father, even if he had the permission, express or implied, of his father so to use the car. Of course if the use of the car by the minor son granted by the father was of such a character, or for such purpose, as necessarily or probably to involve unusual dangers to other persons, another question might arise, but under the circumstances of this case we have no hesitation in holding that the father is not liable provided the jury finds that

the son was using the car solely for his own purposes and not in any way for his father. Generally speaking, when there is a conflict of fact, the case should be submitted to the jury under proper instructions of the court. It was said in *Stewart Taxi-Service Co.* v. *Roy, supra,* that the facts that the car was owned by the defendant and a man named Ennis was operating it "made out a *prima facie* case in support of the allegation that the machine was operated by the defendant's agent or servant," and JUDGE BURKE quoted at some length from JUDGE MCSHERRY's opinion in *Vonderhorst Brewing Co.* v. *Amrhine,* 98 Md. 406, where, amongst other things, it was said: "It is a reasonable presumption that a person driving the team of another is the agent or servant of the owner of the team, unless it be shown by the owner of the team that the contrary is the fact." But it is a presumption that can be rebutted and, in *Symington* v. *Sipes, supra,* and *State, use of Debelius,* v. *Benson, supra,* this Court held as matter of law that under the evidence in those cases the drivers at the times of the accidents were not acting within the scope of their employment, and hence affirmed prayers which instructed verdicts for the defendants, but in the *Roy Case, supra,* and others that might be cited, facts were presented which were required to be submitted to the jury.

The fourth prayer seems to present the facts alleged in the declaration and should have been granted, and the fifth should also have been granted. For errors in granting the plaintiff's first and second prayers, and in rejecting the defendant's third, fourth and fifth prayers, the judgment must be reversed.

> *Judgment reversed and new trial awarded, the appellee to pay the costs above and below.*