STATE OF MARYLAND, to the use of CHARLES K. CAVEY *v.* WILLIAM M. KATCEF et al.

[No. 32, April Term, 1930.]

272

*Decided June 11th, 1930.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*H. Harry Rosenberg,* for the appellant.

*Edwin H. Brownley,* for the appellees.

PARKE, J., delivered the opinion of the Court.

The judgment in this case was entered for the defendants upon the court sustaining their several demurrers to the declaration in an action brought under sections 1, 2, 3 and 4 of article 67 of the Code, for the use of the surviving father of an infant whose death was alleged to have been the result of the wrongful acts of the defendants. There is but one count, which is quite lengthy, and need not be reproduced, as, omitting the introduction and conclusion, and the allegations of the relationship of the father and son and the services rendered by the infant to the parent, the fundamental facts to constitute a cause of action may thus be stated.

The proceedings are against William M. Katcef and Moses Katcef, individually and as partners trading as William M. Katcef & Brother; James King and Sons, Inc., a corporation; and Robert W. King. The partners and the corporation were engaged in the business of buying and selling horses. The partners owned a horse, which they knew "had a propensity to be vicious, unruly, unmanageable, shy and dangerous to drive," and some time in the month of July, 1928, they delivered the animal to the corporation to sell, and the corporation had the horse in its possession until July 19th, 1928, when its vice-president, Robert W. King, sold the horse to a certain James Pryor, who is not a defendant, upon the representation that the beast was gentle and easy and quiet to drive and was not shy, when the corporation and its vice-president knew, or by the exercise of ordinary care and caution could have known, that the horse did not have the mentioned qualities, but had a propensity to be vicious, unruly, unmanageable, and dangerous to drive. The buyer did not know of these faults at the time of the sale, and accepted the

representation as true. The horse was delivered to the purchaser and the following day was harnessed and hitched by the owner to his wagon, and, by reason of the animal's propensity to be vicious, unruly, unmanageable, shy, and dangerous to drive, and without any negligence or want of care on the part of the owner, the horse suddenly and without warning ran away with the wagon down a public alley until he ran into a pony wagon drawn by a pony and standing in the alley in the possession and under the control of the father, who had permitted the infant to sit on the seat of the wagon. The child was killed in the collision without any fault on his part.

The representation of the qualities of the horse was made by the corporation through its vice-president, whose act was that of the corporation. There is no allegation that the sellers authorized the agent to make any representation or warranty, nor were the sellers bound to make to their agent any disclosure of their knowledge of the defects, so the declaration is free of averment imputing to the sellers any wrongful act done by them personally. But when made, as here alleged, for their benefit and within the course of the agency to sell, the principals are responsible for the agent's false representation, although given without their express command or privity. In order to characterize the act of the agent as wilful, the pleader charged the agent in the alternative with actual or imputed knowledge of the falsity of its representation. If the agent knew or believed the representation to be false, or if it undertook to state as a fact what the agent did not know was true or false, in order to make a sale, the agent was guilty of a fraud, and the agent and its corporate officer making the representation would be jointly liable with the principal, because a material representation of a quality or condition of the thing sold, with a knowledge of its falsity, or a reckless indifference to whether it is true or not, would make the representor and agent liable with his principal for the fraud. If, however, the agent acted in good faith, and the fraud or deceit with respect to

the quality of the horse was the principal's act alone, the principal and not the agent and its executive officer making the representation would be liable to a third party; nor would the agent and its executive officer be liable to a third party for mere neglect in not ascertaining by inquiry or trial the quality or condition of a horse in the agent's hands for sale. *Mechem on Agency* (2nd Ed.), secs. 1987, 1458, 1459, 1464-1469, 1482; *Pollock on Torts* (8th Ed.), 303, 304.

It follows that the agent and its vice-president, who made the representation, may or may not be jointly liable in tort with the principal according to the actual facts; and so to charge these defendants in the alternative, as was done in the declaration, is bad, since by one alternative they are bound and, by the other, in the absence of particular circumstances, they are exonerated from legal liability. The rule of certainty in pleading demands that the parties should not be joined unless the allegations are consistent with a joint liability. The declaration was, therefore, bad for the joinder of the agent and its vice-president. *Keyser v. Richards,* 148 Md. 669, 677.

2. If the representation be found to be untrue, the buyer has a remedy in contract, but if the representation be fraudulent, the buyer may, at his election, treat the representation as a substantative ground of action in tort. Should there be no breach of contract, nor of specific duty, nor of fraud, a cause of action does not arise. So, in the case of third parties; and the second question on this appeal is whether or not the infant, if he had survived, had any cause of action against the defendants on the facts alleged. *State v. Consol. Gas Co.,* 146 Md. 390, 395. The declaration discloses that for a day prior to the collision the horse was in the possession of the buyer, and under his complete dominion, and that the animal's escape, flight and actions were free from any negligence on the part of the buyer, but there is no allegation that the buyer had remained ignorant of any evil propensity imputed until the time the horse ran away. If the buyer had learned of the horse's vicious nature during

the time separating the delivery and the happening of the collision, this knowledge, coupled with the fact that the buyer had the horse in his possession and under his control, broke any causal connection between the misrepresentation of the defendants and the injury to the infant because of the intervening knowledge of the buyer of the vicious propensity and of his complete dominion over the horse that together, after the acquisition of such knowledge, made the misrepresentation then too remote to be the proximate cause of the injury in view of the subsisting active duty thus cast upon the buyer to guard against the infliction of injury by the known dangerous propensity of the horse. As a restraint upon litigation and for economic reasons, the liability of the original seller of goods and chattels should end when the wrongful consequences cease to be actively operative or when there is the intervention of some diverting force. *Beven on Negligence* (2nd Ed.), p. 91.

In the instant case, when the buyer in possession and control obtained knowledge of the vicious quality of the horse, he became bound to use due care according to the circumstances and any default by him in this respect causing injury would be the proximate cause. Since the declaration avers that the buyer was without fault in his control of the horse, at the time of the breaking away from control and bolting, it was necessary, upon the plaintiff's own theory of liability, for the declaration to allege that the buyer did not know of the viciousness of the horse at the time of the runaway. This defect makes the declaration bad, as so material an element in the right to recover cannot be left to conjecture or supplied by speculation. *State, use of Hartlove v. Fox & Son,* 79 Md. 514, 528.

A less grave vice of the declaration is its lack of certainty with respect to the circumstances and cause of the horse's running away. It does not appear whether the horse was loose, attended, hitched, or was being driven; nor what was the buyer's conduct when the horse got beyond the buyer's control; nor what actually preceded the bolting. Something for which the neither the seller nor the buyer was in any way

responsible may have so alarmed the horse as to have been the real cause of the animal's running off. In this class of cases, where the owner, who had not only the possession but also the exclusive control of the animal doing the mischief at the time of its happening, is specifically exonerated by the pleading and is not made a defendant, the requirement of certainty must be strictly enforced. Therefore, it is not sufficient to charge that the act of the horse may be due to any of a list of almost all evil propensities ascribable to that animal, nor to assert generally that the buyer has used all due care without discovering the particular act to which the allegation applies. *State, use of Hartlove v. Fox & Son, supra,* 528, 529.

3. For these reasons the demurrer was properly sustained, but it may be the vices indicated are susceptible of correction by amendment, and that will require a brief statement of the court's conclusion on the main question. In the case last cited this court adopted and applied the rule "that if a vendor sells any property, which he knows to be imminently dangerous to human beings and likely to cause them injury, to an innocent vendee who is not aware of the danger and to whom false representations have been made as an inducement to the sale, he may, under proper allegations and proof, be held responsible not only to the vendee, but to such person or persons as the vendee may in the ordinary course of events call upon to take charge of the property for him." *Supra,* 527.

This statement was made in a case where the seller, who knew a horse to be affected with a disease dangerous to mankind, induced an innocent purchaser to buy the animal upon the false representation that the disease was a cold, and the buyer, in continued ignorance of the truth, had the horse attended by a third party, who contracted, sickened and died of the disease. The seller had no contractual relation with the dead man, and made no representation to him, and did not know that the victim would be the attendant upon the horse. *Ibid.,* 525. While factually different, this case is controlling in principle and permits a recovery if the seller of a horse,

with knowledge that the animal is so vicious and unmanageable as to render his being driven or used upon the highways dangerous to those there traveling on foot or in vehicles, induces a sale by the false representation that the horse is gentle and safe for driving; and delivers the horse to the buyer, who continues in ignorance of the actual nature and viciousness of the animal until after having hitched the horse properly to a wagon, while preparing to drive, or driving, the horse upon a highway, and keeping the usual control, in the customary way, the horse, without any other cause than his inherent viciousness, and while the buyer was keeping or driving the horse in a careful and competent manner, bolted and ran away and into a pony cart rightfully in the highway and killed an infant, who was without fault.

The theory upon which a recovery would be permitted is that the general rule that the liability of the seller of an article or chattel does not extend to third parties is subject to an exception when its quality or condition is imminently dangerous to human life, or the defect is known to and concealed by the seller. The facts recited above relate to false representations of a material quality that were made to effect a sale, and although the seller may have meant no other wrong than making sale of the horse for more than it was worth, he has wilfully put the travelling public in danger of life and limb by his falsehood. The subject of the bargain and sale was an animal whose familiar and customary use is being driven upon the public highways and thoroughfares in common with travelers afoot, mounted and in vehicles. A vicious, unmanageable horse, with a propensity to run away, is a dangerous animal upon the public ways, and his use there creates a latent danger to the traveling public that constantly threatens and impends while the animal is on the road. It was the seller's duty to protect the public from the danger of such an animal on the highway. He practiced a fraud to effect a sale, and withdrew from the public the protection they were entitled to receive from the buyer, by inducing the buyer to believe the horse was free of fault and a safe driver. As a consequence of this fraud, the seller

knowingly increased the peril not only to the buyer but also to the public until the buyer should become conscious of the actual nature and habits of the horse, as until that knowledge was acquired the buyer would innocently imperil the life and person of the public by exercising only that care in the control of the horse that a reasonable man would prudently exercise in the case of a horse having the quality ascribed by the false representation. It is a natural consequence of the seller's wrong that the horse would more probably run away from an innocent buyer, because of the state of mind subsisting while the seller's fraud was undiscovered, so that the mischief set in motion by the seller's fraud continued in operation until the buyer became aware the horse was a dangerous animal to the public and diverted the course of events by a failure to use due care in the light of the newly learned facts. The decision in *State, use of Hartlove, v. Fox & Son, supra,* when considered in connection with the facts and the reasoning employed in arriving at the conclusion, sustains the view that a cause of action would exist in favor of the third party if the facts here set forth are in proof.

Entertaining the opinion that the demurrer was properly sustained, the judgment will be affirmed, but the case will be remanded to afford the plaintiff an opportunity to amend the declaration, if this be desired.

*Judgment affirmed, with costs, and cause remanded.*