LAURA D. ROUNDS, ADMINISTRATRIX, *v.* WILLIAM H. PHILLIPS ET AL.

[No. 103, October Term, 1933.]

152

*Decided January 18th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*F. W. C. Webb* and *William W. Travers,* with whom were *Carroll E. Bounds* and *Woodcock & Webb* on the brief, for the appellant.

*Clarence W. Miles* and *Seymour O'Brien,* with whom were *Miles, Bailey & Williams,* and *Semmes, Bowen & Semmes,* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

The question for decision in this case is raised by an appeal from the action of the lower court in sustaining the demurrers interposed by the defendants (appellees) to the declaration and each count thereof. The appellant is the administratrix of Robert Lee Rounds (plaintiff below), and the appellees are William H. Phillips, Sr., and Bessie Phillips, his wife, the father and mother of William H. Phillips, Jr., deceased. The declaration contains two counts, which are identical, with the exception that the first count asks damages for the pain and suffering of the appellant's decedent, while the

second count asks for recovery for damages done to appellant's decedent's truck and the contents thereof.

The first count of the declaration is as follows: "For that the said Robert Lee Rounds, unmarried, a resident and citizen of Wicomico County, Maryland, died in said county on the 13th day of April, 1933, intestate, and the said Laura D. Rounds, mother of said deceased, thereafter regularly qualified, on or about the 18th day of April, 1933, in the Orphans' Court for said county as administratrix of the estate of said deceased; and for that for a long time prior to the 5th day of February, 1932, and between said latter date and the 13th day of April, 1933, William H. Phillips, Jr., a minor, born on the 1st day of December, 1912, now deceased, was habitually negligent, reckless and incompetent in the operation of automobiles on the public highways of the State of Maryland and elsewhere, including excessive and dangerous rates of speed, and was either inherently incapable of comprehending the legal duty imposed upon him to operate automobiles on said public highways with reasonable care and caution or was contemptuous of that duty and of the rights of other travelers on said public highways, and that, as a result of his habitual negligence, recklessness and incompetence in the operation of automobiles as aforesaid, the said William H. Phillips, Jr., prior to the said 5th day of February, 1932, had seriously injured himself during his operation of automobiles, and had been frequently warned by the police of the State of Maryland and by others, including the defendants, to desist and refrain from his said habitually reckless, negligent and incompetent practices in the operation of automobiles, and had been, on or about the 20th day of February, 1930, convicted by S. King White, Justice of the Peace, Salisbury, Maryland, of operating an automobile on the public highways within said Wicomico County in excess of the speed limit provided in the Public General Laws of Maryland and had been fined the sum of $10.00 therefor, and had been, on or about the 30th day of January, 1932, convicted by the said S. King White, Justice of the Peace

as aforesaid, of reckless driving of an automobile on the said public highways of said Wicomico County in violation of the Public General Laws of Maryland and had been fined $5.00 therefor, and had been, on or about the 4th day of May, 1932, convicted by said S. King White, Justice of the Peace as aforesaid, of operating the hereinafter mentioned Buick automobile on the public highways of said Wicomico County while he, William H. Phillips, Jr., was under the influence of liquor in violation of the said Public General Laws of Maryland and had been fined $100.00 therefor, and had experienced, on or about the 10th day of May, 1932, the revocation of his license as the operator or chauffeur of automobiles by the Commissioner of Motor Vehicles of Maryland because of the operation of said Buick automobile while under the influence of liquor as aforesaid, and had experienced, on or about the 10th day of May, 1932, the revocation or suspension of the license issued by said Commissioner of Motor Vehicles, as hereinafter set forth, for the operation of said Buick automobile as the result of the aforesaid revocation of his license as the operator or chauffeur of automobiles for the reasons aforesaid, and had procured, only after great difficulty, on or about the 4th day of November, 1932, reinstatement of license to him from the said Commissioner of Motor Vehicles as the operator or chauffeur of automobiles, after having been compelled to file and establish with the said Commissioner of Motor Vehicles, upon the demand of the latter, so-called 'financial responsibility' in the form of a policy of insurance in the sum of $5,000.00, issued by Keystone Indemnity Company, now reputedly insolvent, for the financial benefit and protection of any persons, firms or corporations who or which might sustain damages as the result of any subsequent negligence, recklessness or incompetence of the said William H. Phillips, Jr., in the operation of automobiles, as a condition precedent thereto as provided in the Public General Laws of the State of Maryland; and for that on or about the 5th day of February, 1932, the defendant, William H. Phillips, Sr., father of said William

H. Phillips, Jr., purchased the said Buick automobile, hereinbefore mentioned, and paid therefor from his own funds and, thereafter, on or about the 6th day of February, 1932, in conjunction with said William H. Phillips, Jr., suffered and permitted title to said Buick automobile to be registered in the office of the said Commissioner of Motor Vehicles and license for the operation thereof to be issued by said Commissioner of Motor Vehicles, both pursuant to the Public General Laws of Maryland, in the name of the said William H. Phillips, Jr., although the defendant, said William H. Phillips, Sr., knew or by the exercise of ordinary care and prudence should have known, at said time that the said William H. Phillips, Jr., was habitually negligent, reckless and incompetent in the operation of automobiles on the public highways of the State of Maryland and elsewhere including excessive and dangerous rates of speed, and was either inherently incapable of comprehending the legal duty imposed upon him to operate automobiles on said public highways with reasonable care and caution or was contemptuous of that duty and of the rights of other travelers on said public highways, as aforesaid, and also knew, or by the exercise of ordinary care and prudence should have known, of the occurrences hereinbefore set forth in the record and career of said William H. Phillips, Jr., as the operator or chauffeur of automobiles which had transpired prior thereto as aforesaid; and for that, on or about the 9th day of July, 1932, the defendants and said William H. Phillips, Jr., in order that the said Buick automobile might be licensed by the said Commissioner of Motor Vehicles for operation on the public highways of Maryland and elsewhere by the defendants and others, including said William H. Phillips, Jr., and as the result of the revocation or suspension, under the circumstances hereinbefore set forth, of the aforesaid license for the operation thereof theretofore issued as aforesaid, caused title to said Buick automobile, theretofore registered in the name of said William H. Phillips, Jr., as aforesaid, to be assigned and transferred to the defendant, Bessie Phillips, wife of the

defendant, said William H. Phillips, Sr., and mother of the said William H. Phillips, Jr., and thereafter caused licenses for the operation thereof, as aforesaid, for the remainder of the year 1932 and for the year 1933 to be issued by said Commissioner of Motor Vehicles in the name of the defendant, said Bessie Phillips, and that title to said Buick automobile remained so registered and license therefor likewise remained in the name of the defendant, said Bessie Phillips, on th 13th day of April, 1933; and for that the defendants negligently, carelessly and imprudently furnished said William H. Phillips, Jr., with and negligently, carelessly and imprudently permitted and suffered the said William H. Phillips, Jr., to be in possession of and to use and operate said Buick automobile upon the said public highways of the State of Maryland and elsewhere whenever the said William H. Phillips, Jr., desired or chose so to do between the said 6th day of February, 1932, and the 13th day of April, 1933, excepting the period between the 10th day of May, 1932, and the 9th day of July, 1932, during which time said Buick automobile was unlicensed for operation as aforesaid, and at their own expense, negligently, carelessly, and imprudently furnished gasoline and oil therefor and kept the same in repair during said period, and also negligently, carelessly and imprudently assisted and abetted the said William H. Phillips, Jr., in obtaining reinstatement of license, on or about the 4th day of November, 1932, as the operator or chauffeur of automobiles as aforesaid, and in that connection negligently, carelessly and imprudently provided or caused to be provided the said insurance policy in the sum of $5,000.00 as aforesaid, the said William H. Phillips, Jr., having been possessed of no property and assets and having been dependent upon the defendants for his support and maintenance, although the defendants knew, or by the exercise of ordinary care and prudence should have known, at all times between said 5th day of February, 1932, and said 13th day of April, 1933, that the said William H. Phillips, Jr., was habitually negligent, reckless and incompetent in the

operation of automobiles on the public highways of the State of Maryland and elsewhere, including excessive and dangerous rates of speed, and was either inherently incapable of comprehending the legal duty imposed upon him to operate automobiles on the said public highways of Maryland and elsewhere with reasonable care and caution or was contemptuous of that duty and of the rights of other travelers on said public highways, as aforesaid, and also knew, or by the exercise of ordinary care and prudence should have known, of the occurrences hereinbefore set forth in the record and career of the said William H. Phillips, Jr., as the operator or chauffeur of automobiles as the same transpired, and also knew, or in the exercise of reasonable and ordinary prudence, care and forethought should have contemplated and anticipated, that the possession, use and operation of said Buick automobile by the said William H. Phillips, Jr., necessarily or probably involved or caused unusual danger to other travelers on the said public highways using due care and caution; and for that at or about 5.30 A. M. on said 13th day of April, 1933, while the said William H. Phillips, Jr., was negligently, carelessly and imprudently furnished with said Buick automobile by the defendants, as aforesaid, and was in possession of and was using it with the negligent, careless and imprudent permission and sufferance of the defendants, as aforesaid, and was negligently, carelessly and imprudently furnished with gasoline, oil and repairs therefor by the defendants as aforesaid, and after the defendants had negligently, carelessly and imprudently assisted and abetted the said William H. Phillips, Jr., in obtaining reinstatement of license as the operator or chauffeur of automobiles as aforesaid, and in that connection negligently, carelessly and imprudently had provided or caused to be provided the said insurance policy as aforesaid, and was operating the same is a westerly direction along the State highway in said Wicomico County leading from Salisbury to Mardela Springs, and returning to the home of the defendants at Hebron, Maryland, about six miles westerly from said Salisbury, Maryland, with whom and at which

former place the said William H. Phillips, Jr., resided, negligently, recklessly and incompetently, and at a rate of speed of approximately seventy-two miles per hour, and in such negligent, reckless and incompetent manner as the defendants knew or by the exercise of ordinary care and prudence should have known, that it was habitual and customary for the said William H. Phillips, Jr., to operate automobiles as aforesaid, the said Robert Lee Rounds, now deceased, engaged in dairying operations and farming at the farm of his father, one E. Henry Rounds, located about four miles westerly from said Salisbury and along the said State highway, was operating his milk delivery motor truck along and upon said State highway in an easterly direction towards Salisbury, with due care and caution, for the purpose of making an early morning delivery of his dairy products to customers within said Salisbury; and for that as a result of the aforegoing negligence, recklessness and incompetence of the said William H. Phillips, Jr., in the operation of the aforesaid Buick automobile, then and there titled and licensed and furnished to him by the defendants as aforesaid, and without any negligence or want of due care on the part of the said Robert Lee Rounds directly contributing thereto, the said William H. Phillips, Jr., caused the said Buick automobile, then and there operated by him as aforesaid, to collide with terrific force and violence with the said milk delivery motor truck then and there operated by the said Robert Lee Rounds, at a point in said Wicomico County one-quarter mile, more or less, from the westerly corporate limits of the said City of Salisbury, and to the west of the center of said State highway; and for that as the result of said collision the said Robert Lee Rounds was terribly, hideously and mortally mutilated, bruised and shocked and otherwise severely hurt, wounded and injured and was caused consciously to suffer excruciating bodily pain and mental anguish; and for that said mutilation, bruises, shocks, hurts, injuries, and conscious bodily pain and mental anguish, suffered by the said Robert Lee Rounds and inflicted upon him by the said negligence, reck-

lessness and incompetence of the said William H. Phillips, Jr., as aforesaid, resulted proximately and directly from the negligence, carelessness and imprudence of the defendants in furnishing said William H. Phillips, Jr., with and in suffering and permitting him to be in possession of and to use and operate said Buick automobile at said time and place of said collision, as aforesaid, and in furnishing gasoline, oil and repairs therefor, as aforesaid, and in assisting and abetting the said William H. Phillips, Jr., in obtaining reinstatement of license as the operator or chauffeur of automobiles, as aforesaid, and in that connection, in providing or in causing to be provided the said insurance policy as aforesaid, well knowing, as the defendants then did, or should have done by the exercise of ordinary care and prudence, that said William H. Phillips, Jr., was habitually negligent, reckless and incompetent in the operation of automobiles on the public highways, of Maryland and elsewhere, including excessive and dangerous rates of speed, and was either inherently incapable of comprehending the legal duty imposed upon him to operate automobiles on said or any other public highway with reasonable care and caution or was contemptuous of that duty and of the rights of said Robert Lee Rounds and of other travelers on said or any other public highways, as aforesaid, and well knowing as the defendants then did, or should have done by the exercise of ordinary care and prudence of the occurrences hereinbefore set forth in the record and career of said William H. Phillips, Jr., as the operator or chauffeur of automobiles which had transpired prior thereto as aforesaid, and also well knowing as the defendants then did, or in the exercise of reasonable and ordinary prudence, care and forethought should have contemplated and anticipated, that the possession, use and operation of said Buick automobile by said William H. Phillips, Jr., at said time and place or at any other time or on any other public highway, by reason of his aforesaid habitually negligent, reckless and incompetent propensities and record in the operation of automobiles, as aforesaid, and particularly of said Buick

automobile, necessarily or probably subjected the said Robert Lee Rounds and any other travelers on said or any other public highway of Maryland or elsewhere, likewise using due care and caution, to the dire and calamitous consequences sustained and suffered by the said Robert Lee Rounds; and for that such mutilation, bruises, shocks, hurts, injuries and bodily pain and mental anguish did not result from any negligence on the part of the said Robert Lee Rounds or of this plaintiff directly contributing thereto."

The theory upon which the plaintiff seeks to recover against the defendants is that the defendants permitted, or failed to prohibit, the use of an automobile by their minor son, which son they knew, or should have known from facts known to them, was negligent, reckless, and incompetent in the operation of automobiles. The declaration alleges that the appellant's decedent was killed and his property damaged by the negligent and reckless use of the automobile by the deceased son of the defendants. The appellant does not seek recovery upon the theory that the negligence of the defendants' deceased son is imputable to the defendants, or that the said son was the agent or servant of the defendants; nor does she attempt to invoke the "family car doctrine," or any other relationship which would make the principle of *respondeat superior* apply. On the contrary, the theory upon which the declaration is drawn entirely eliminates vicarious negligence, and rests solely upon the primary negligence of the appellees themselves in permitting their son, alleged to have been habitually reckless, negligent, and incompetent in the operation of automobiles, to be in possession of and operate the Buick automobile described in the declaration at the time of the accident, when that habitual negligence, recklessness, and incompetence was known to the appellees, or should have been known to them from facts of which they had knowledge. In other words, the plaintiff invokes the principle involved in *Restatement of the Law of Torts,* part IV, *Negligence,* chap. 2, sec. 260: "One who supplies directly or through a third person a chattel for the use of another whom the sup-

plier knows, or from facts known to him should know, to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them." The group of the American Law Institute delegated to formulate and restate the principles contained in the law of torts, as gathered from previous authoritative statements of the courts and text-writers dealing with that subject, have enunciated the principle sought to be invoked in this case in the language above quoted. Up to the present time this court has not had presented to it a case wherein it was necessary to decide the exact point here involved.

In the case of *Whitelock v. Dennis,* 139 Md. 557, 563, 116 A. 68, 70, wherein the "family car doctrine" was sought to be applied, the court, speaking through Chief Judge Boyd, said: "It does not seem to us logical to hold that, if the driver of the owner, who is not related to him, is acting beyond the scope of his employment or not acting for his employer's, but for his own, business when the accident occurs, then the owner is not responsible, yet, if the driver be a son of the owner, although acting wholly for his own business in running the car, the owner is liable. We can see no good reason for holding the owner to a stricter liability in the one case than in the other. * * * Some of the cases speak of the danger of letting incompetent children run the cars, but, if the parent permits a child who is not a licensed operator, or one he knows to be reckless and incompetent, to run a car, another question may arise. * * * Of course, if the use of the car by the minor son granted by the father was of such a character or for such purpose as necessarily or probably to involve unusual dangers to other persons, another question may arise."

The question which might arise, which the court there had in mind, is presented by the case now under consideration.

Again, in *Nelson v. Seiler,* 154 Md. 63, 70, 139 A. 564, 566, Chief Judge Bond said: "'Counsel for the plaintiff contends, however, that these past convictions, and also arrests asked about, would be admissible for another purpose in this particular case. An offer was made to prove that the father of the present appellant owner of the automobile, and a co-defendant, knew of the convictions and arrests of his son alluded to, and it was argued that upon such proof liability might be placed upon the father for intrusting his automobile to an incompetent or dangerous driver. The existence of such a ground of liability, if the facts were proved, was left unconsidered in *Whitelock v. Dennis,* 139 Md. 557, 564, 116 A. 68, and *Myers v. Shipley,* 140 Md. 380, 384, 116 A. 645; and it is not necessary to consider it here." In the case of *Myers v. Shipley, supra,* referred to by Judge Bond, in commenting upon *Whitelock v. Dennis, supra,* the court said: "Of course, we were careful to confine the rule to such facts as we then had before us, which did not show that the use of the car by the son necessarily or probably involved unusual danger, and there was no evidence of his being reckless or incompetent to drive a car."

It will thus be seen, from the language used in *Whitelock v. Dennis, Myers v. Shipley* and *Nelson v. Seiler, supra,* that the question now presented was not presented and decided in any one of those cases. Neither did the court in any way intimate its views, further than stating that, if the facts should be as alleged in the declaration here considered, "another question would be presented." We have definitely held that an automobile is not an inherently dangerous instrumentally, but is an instrument which is potentially dangerous. *Supra; Balto.; C. & A. R. Co. v. Turner,* 152 Md., at page 228, 136 A. 609; *Cumberland & Westernport Transit Co. v. Metz,* 158 Md., at page 448, 149 A. 4, 565. There is no complete analogy between the cases of *State v. Fox,* 79 Md. 514, 29 A. 601, and *State v. Katcef,* 159 Md. 271, 150 A. 801, and the case at bar. In those cases we were dealing with inherently dangerous instrumentalities, in one

case with a horse afflicted with an incurable disease called "glanders," and in the second with a horse of vicious, wild and runaway propensities. The owner who sold these animals, both held by the court to be inherently dangerous, were held liable to third persons for injuries sustained, upon the principle that an inherently dangerous instrumentality was placed in such position that injury might be inflicted, and that without notice or warning to the vendee in respect to the dangerous qualities or afflictions. There is, however, a logical analogy when a potentially dangerous instrumentality is put into the hands of a reckless and incompetent operator, to be used in proximity to the traveling public. In other words, there is no analogy when the owner of an automobile permits it to be used by one not known to be incompetent and reckless, because under such conditions it is not inherently dangerous; while on the other hand, if he loans his automobile to another who is known to the owner to be habitually reckless and to operate an automobile under the influence of liquor, under such conditions the automobile, plus the incompetency of the person to whom it is entrusted, does create an inherently dangerous instrumentality. In *Berry on Automobiles* (6th Ed.), sec. 1327, under the subtitle "Entrusting automobile to incompetent person," the author states: "Aside from the relation of master and servant, the owner of an automobile may be rendered liable for injuries inflicted by its operation by one whom he has permitted to drive the same, on the ground that such person, by reason of his want of age or experience or his physical or mental condition, or his known habit of recklessness, is incompetent to safely operate the machine." The statement of the rule as thus laid down is supported by many cases. *Rush v. McDonnell*, 214 Ala. 47, 106 So. 175; *Rocca v. Steinmetz*, 61 Cal. App. 102, 214 P. 257, 260; *Otoupalik v. Phelps*, 73 Colo. 433, 216 P. 541; *Brown v. Green & Flinn*, 6 Boyce (29 Del.), 449, 100 A. 475; *Tyree v. Tudor*, 183 N. C. 341, 111 S. E. 714; *Elliott v. Harding*, 107 Ohio St. 504, 140 N. E. 338; *Crowell v. Duncan*, 145 Va. 489, 134 S. E. 576;

*Mitchell v. Churches,* 119 Wash. 547, 206 P. 6; *Dormeyer v. Hall,* 192 Wis. 197, 212 N. W. 257; *Hopkins v. Droppers,* 184 Wis. 400, 198 N. W. 738; *Lynde v. Browning,* 2 Tenn. Civ. App. 262; note *L. R. A.* 1915D, 696.

In *Gardiner v. Solomon,* 200 Ala. 115, 75 So. 621, 623, the court said: "While automobiles are not inherently regarded as dangerous instrumentalities, and the owner thereof is not responsible for the negligent use of same, except upon the theory of the doctrine of *respondeat superior,* yet there is an exception if he intrusts it to one, though not an agent or servant, who is so incompetent as to the handling of same as to convert it into a dangerous instrumentality, and the incompetency is known to the owner when permitting the use of the vehicle." And in *Tyree v. Tudor, supra,* it was held that when an automobile owner, knowing the reckless character of his sixteen-year-old son, gave him permission to use a car to convey a young lady to and from a dance, he was liable for his son's negligent driving causing her death. In *Allen v. Bland* (Tex. Civ. App.), 168 S. W. 35, where the petition charged the defendant with negligence in permitting his eleven-year-old son to drive a heavy and powerful automobile on the public streets, knowing that the boy was reckless, careless, inexperienced, and wholly unfit and incapable of driving or steering the automobile, which it appears the father had purchased for the use of the son, the court, in affirming a judgment for the plaintiff, held correct a charge to the jury which instructed them to find in favor of the plaintiff, should they believe, from the preponderance of the testimony, that the defendant permitted his son to drive the machine, knowing that, because of his youth, inexperience, and want of ability to run it, danger or injury was likely to result to other persons from its operation by him. See also *Thibodeau v. Cheff,* 124 Ont. L. Rep. 214, Ann. Cas. 1912A, 582.

In *Raub v. Donn,* 254 Pa. 203, 98 A. 861, 862, the court held that there was no error in charging the jury that: "It is the duty of a man to see that his automobile is not run by a careless, reckless person, but that it is in the hands of a

skillful and competent person." In California, where the "family car doctrine" does not prevail, it was held in *Rocca v. Steinmetz, supra*, that: "If he (the owner) were to intrust his car to a person whom he knew to be insane or intoxicated or utterly incompetent to run a car, it would certainly shock the common understanding to hold that he was not chargeable with negligence. There can be no difference in principle but only in degree, where he knows the driver to be careless and reckless in the operation of the machine. In any such case, consideration for the safety of others requires him to withhold his consent and thereby refrain from participating in any accident that is liable to happen from the careless and reckless driving of such a dangerous instrumentality." In *Linville v. Nissen*, 162 N. C. 95, 77 S. E. 1096, in which case the family car doctrine was denied, the court stated that it should not be understood as holding that a father would not be liable should he place his automobile in charge of a child of tender years who was incompetent to operate it, but that in such case liability would arise from the father's negligence and not from any theory of imputed negligence of the child. In *Elliott v. Harding, supra,* it was held: "While an automobile is not a dangerous instrument *per se,* it may become such if operated by one who is unskilled in its use; and, where the owner intrusts such a machine to an inexperienced or incompetent person, liability for damage may arise." See also, *Elliott v. Harding,* 107 Ohio St. 501, 140 N. E. 338, 36 A. L. R. 1128, 1137, and note.

The same principle is recognized in 20 *R. C. L.* 627, sec. 33, wherein it is stated: "Parents are not liable for torts committed by their minor children without participation in the fault by the parent. * * * But the father is liable if he was himself guilty of negligence, as by allowing a young child to have a loaded gun or pistol, directing the son to frighten trespassers by firing a gun, permitting an imbecile child, who had set other fires, to have matches, or sending a boy known to be a reckless rider on an errand on a horse known to be unruly. He is liable, however, only for his own

fault, not for that of the child. To prove his own negligence, evidence is admissible that he knew of the son's former reckless conduct."

In *Wilson v. Brauer*, 97 N. J. Law, 482, 117 A. 699, it was held that where the evidence tends to show that the owner of an automobile expressly authorized a beginner, who had no driver's permit, and who, to the knowledge of the owner, knew nothing of the operation of an automobile, to run it upon the streets of a populous city for the purpose of learning how to operate it, the liability of the owner for an injury to a pedestrian, caused by the operator's want of knowledge and skill, is a question for the jury. The court stated: "The underlying principle of the rule is stated in *Van Winkle v. American Steam-Boiler Co.*, 52 N. J. Law, 247 (19 A. 472), thus: 'In all cases in which any person undertakes (or authorizes) the performance of an act which, if not done with care and skill, will be highly dangerous to the persons or lives of one or more persons, known or unknown, the law, *ipso facto*, imposes as a public duty the obligation to exercise such care and skill.' It is true, we believe, that automobiles are not generally held to be dangerous instrumentalities *per se*. Certainly, when carefully and intelligently handled, they are not usually dangerous to other persons using public highways with due care. But their great power, weight, and speed endow them with dangerous potentialities, and, when not handled carefully by competent persons, they become, under certain conditions, highly dangerous instrumentalities and a public menace."

We have cited, perhaps at tiresome length, cases and quotations therefrom in order to demonstrate the authority upon which the quotation from the *Restatement of the Law of Torts* is founded, because, as we have stated, the question has not been heretofore directly passed upon by this court. We are of opinion, after a careful and exhaustive examination of cases, that the principle contained in the quotation from the *Restatement* is a fair and accurate statement of the rule, deduced from opinions representing the great weight of authority in this country. Of course, there are, and must be,

limitations upon the application of the rule; but we find that the facts alleged in the declaration, and admitted to be true for the purpose of the decision on demurrer, are such as to create liability on the part of the defendants.

It has been suggested that there may be a distinction between the liability of the father and that of the mother, in other words, that the mother may be liable, and the father not, because the title and ownership of the Buick car, operated by their deceased son at the time of the accident here complained of, was in the mother. Under the facts of this case, that, in our opinion, does not create a valid distinction. The son was a minor, and the father, as the controlling head of the family, had the authority and power to permit the use by the son of the mother's automobile, or to prohibit it. The facts are that in the first instance the father purchased and gave to the son the automobile, and had it titled in the son's name; that he unquestionably knew or should have known of the son's habits of intoxication and habitually reckless and negligent use of automobiles; he knew that the son had injured himself in an accident, and the father had personally warned the son in respect to the probable result of the son's recklessness; that the son lived with the father and mother, in their house; that the father knew of three convictions of the son for violation of the automobile law, one for exceeding the speed limit, another for reckless driving, and finally for driving an automobile while under the influence of liquor, these convictions extending over a period both before and after he bought and gave to the son the Buick automobile referred to; that the father knew, at the time of his son's conviction for driving under the influence of liquor, that his driver's permit was revoked, at that time the title to the Buick car being in the son, and that the license to operate the Buick automobile was also revoked, and that it could not be used so long as the title remained in the son; that the father then participated in having the title to the automobile, which was formerly in the son, transferred to the mother, and actively interested himself in securing a return to the son of the driver's permit, in which effort he was only successful

after securing an indemnity bond against loss resulting from accidents occasioned by the son's driving, this bond being in the amount of $5,000.

We do not think that the title to the automobile, as shown by the records of the automobile commissioner of the state, is conclusive, but that the principle applies not only to the owner of an automobile, but to anyone who has the right to permit and the power to prohibit the use thereof. Having such power and authority, if he does not prohibit his minor son, who he knows is addicted to driving an automobile while under the influence of liquor, and is habitually negligent and reckless in its use, there can be no valid distinction between him, under such circumstances, and the one who has the record title to the automobile in question. In respect to the mother, the allegations are specifically as to her knowledge of her son's reckless and negligent propensities, and that she had exactly the same knowledge, or was in possession of facts from which such knowledge could be gained, as the father. Recognizing the principle upon which liability is based, as hereinbefore set forth, we are compelled to hold that if the facts as alleged are proven to the satisfaction of the jury, the defendants herein would be liable.

There is one other question raised in the appellee's brief, in respect to the first count of the declaration, in which the injury for which damages are sought is the pain and suffering of Robert Lee Rounds, the appellant's decedent, and that is, that the allegations of the declaration are such as to show that Rounds was instantly killed, and that any pain or suffering which he underwent was caused by act of death, in other words, that such pains were death throes. It might have been more explicit in this connection if the plaintiff's allegation had been that, after the collision and injury to him, he had lingered and lived a definite period of time, and that during such time he suffered great pain and physical and mental anguish. But we are unable to say that the language used in the declaration on this point is insufficient, it being: "That said Robert Lee Rounds was terribly, hideously and mortally mutilated, bruised and shocked and otherwise severely hurt,

wounded and injured and was caused consciously to suffer excruciating bodily pain and mental anguish; and for that said mutilation, bruises, shocks, hurts, injuries, and conscious bodily pain and mental anguish, suffered by the said Robert Lee Rounds and inflicted upon him by the said negligence, recklessness and incompetence of the said William H. Phillips, Jr., as aforesaid, resulted proximately and directly from the negligence, carelessness and imprudence of the defendants in furnishing said William H. Phillips, Jr., with and in suffering and permitting him to be in possession of and to use and operate said Buick automobile at said time and place of said collision." If his death was instantaneous with the injury, he could not consciously suffer the pain and mental anguish alleged; and the declaration in this particular is, in our opinion, sufficient to allow damages under the first count, if the proof shows that the deceased did consciously suffer as described therein.

The views herein expressed compel a reversal of the judgment.

> *Judgment reversed, and new trial awarded, with costs to the appellant.*